# FOR PUBLICATION



FILED
May 30 2014, 7:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JULIE P. VERHEYE**
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH FUENTES, | ) | |
| | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1310-CR-522 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1210-FA-28

**May 30, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Joseph Fuentes ("Fuentes") was convicted in St. Joseph Superior Court of Class A felony attempted murder, Class C felony possession of a handgun by a felon, Class D felony criminal recklessness, and Class D felony resisting law enforcement, and was sentenced to an aggregate term of forty years. Fuentes appeals and presents three issues for our review, which we restate as:

I. Whether the trial court erred in admitting evidence that the police found an AR-15 rifle in the trunk of Fuentes's car;

II. Whether the trial court improperly instructed the jury to continue to deliberate; and

III. Whether the State presented evidence sufficient to convict Fuentes of attempted murder.

We affirm.

**Facts and Procedural History**

On October 2, 2012, South Bend Police Officers John Comeau ("Officer Comeau") and Tim Cichowicz ("Officer Cichowicz") were dispatched to a house on Ford Street in South Bend, Indiana on a report of a possibly armed male. When the officers arrived at the scene, Fuentes was standing by his tan Cadillac. Another man, later identified as Jaime Duron ("Duron") was standing in the yard of the house. Officer Comeau told Duron to approach him and ordered Fuentes not to move. Duron obeyed the officer's commands, but Fuentes jumped into his car and drove away. Officer Cichowicz pursued Fuentes in his patrol car with the siren and flashing lights activated. Fuentes ignored Officer Cichowicz's car and continued to flee, running through a stop sign. Soon thereafter, Fuentes lost control of his car and crashed into a nearby yard. Undaunted, Fuentes exited his car and fled on foot.

Officer Cichowicz got out of his patrol car and gave chase on foot. With Officer Cichowicz closing in on him, Fuentes slowed down, turned around, and pointed a firearm at Officer Cichowicz at head level. Officer Cichowicz dove for cover and heard Fuentes fire the weapon. Fuentes then continued to flee down an alleyway. Officer Cichowicz continued to pursue Fuentes, took cover behind a garage, and peered around the corner. Fuentes, who was approximately twenty-five yards away, fired his weapon two more times as Officer Cichowicz took cover.

Fuentes then took refuge in an abandoned home. After the police SWAT team surrounded the house and kicked in the door, Fuentes surrendered himself. When he was taken into custody, Fuentes did not have a firearm on his person. However, during a search of Fuentes's car, the police found an AR-15 rifle[1] in the trunk. Fuentes asked the police officer who transported him to jail, "if [the police] had found an A.R. rifle in the trunk of the car that [Fuentes] was driving." Tr. p. 306.

As a result of this incident, the State charged Fuentes on October 4, 2012, with Class A felony attempted murder, Class C felony possession of a firearm by a felon, Class D felony criminal recklessness, Class D felony resisting law enforcement, Class D felony intimidation, and Class A misdemeanor carrying a handgun without a license. The State later dismissed the intimidation charge. A bifurcated jury trial commenced on September 3, 2013, with regard to all charges except possession of a firearm by a felon. The jury found Fuentes guilty the following day, and Fuentes then pleaded guilty to being a felon in possession of a firearm. At the October 2, 2013 sentencing hearing, the trial

---

[1] "The AR-15 is a civilian version of the military's M16 rifle." Steinberg v. State, 941 N.E.2d 515, 520 (Ind. Ct. App. 2011).

3

court "merged" the misdemeanor conviction for carrying a handgun without a license into the conviction for possession of a firearm by a felon and imposed an aggregate executed term of forty years. Fuentes now appeals.

## I. Admission of Evidence

Fuentes first claims that the trial court erred in admitting evidence regarding the AR-15 rifle found in the trunk of his car. In reviewing this claim, we note that questions regarding the admission of evidence are left to the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. Rogers v. State, 897 N.E.2d 955, 959 (Ind. Ct. App. 2008), trans. denied. The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id.

When the State began to offer into evidence photographs of the items found in Fuentes's car, including the AR-15 rifle, Fuentes's counsel objected, stating: "I only object to photo number 24. I believe it's a picture of an A.R. 15 found in the trunk of the automobile. I object to it because it's not relevant, and any relevance the gun has to this case is clearly outweighed by the undue prejudice toward [the defendant]." Tr. p. 272. After the State argued to the trial court that the rifle was relevant to Fuentes's motive to flee from the police, Fuentes's counsel replied, "Mr. Fuentes was not charged with possession of a stolen item [i.e., the gun]. I mean there's other evidence of motive to flee that's been presented. Obviously this gun is unduly [] prejudicial. It's an assault rifle." Tr. pp. 272-73.

4

On appeal, Fuentes similarly claims that the admission of evidence that the rifle was found in his trunk was improper because it was irrelevant and unfairly prejudicial.[2] As we summarized in Jackson v. State, 973 N.E.2d 1123, 1127 (Ind. Ct. App. 2012), trans. denied:

> Indiana Evidence Rules 401 through 403 govern relevancy of evidence. Relevant evidence is admissible; irrelevant evidence is not. Ind. Evidence Rule 402. Evidence is relevant if it has any tendency to make any "fact that is of consequence to the determination" of the action more or less probable. Ind. Evidence Rule 401. Relevant evidence can be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Ind. Evidence Rule 403.

All evidence that is relevant to a criminal prosecution is inherently prejudicial; thus proper inquiry under Evidence Rule 403 boils down to a balance of the probative value of the proffered evidence against the likely unfair prejudicial impact of that evidence. Duvall v. State, 978 N.E.2d 417, 428 (Ind. Ct. App. 2012), trans. denied. (citing Carter v. State, 766 N.E.2d 377, 382 (Ind. 2002)). When determining the likely unfair prejudicial impact, courts will look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury. Id.

Here, it is clear that the presence of a rifle, which was not registered to Fuentes, in the trunk of Fuentes's car was relevant to the question of Fuentes's motive to flee from

---

[2] Fuentes also claims that "[t]he real effect of the evidence of this gun was to create the impression in the minds of the jurors that Fuentes was a bad guy and the kind of person who would shoot at another person[.]" Appellant's Br. p. 12. To the extent that this is an argument that evidence regarding the rifle was improper evidence of "prior bad acts" under Indiana Evidence Rule 404(b), Fuentes failed to preserve this argument by objecting on 404(b) grounds at trial. See Lashbrook v. State, 762 N.E.2d 756, 759 (Ind. 2002) (holding that defendant failed to preserve any error in the admission of evidence under Evidence Rule 404(b) where he objected at trial only on grounds of relevancy).

the police. That is, the presence of the rifle made it more likely that Fuentes had a reason to flee from the police when he was ordered to stop. And we do not think that the relevance of this rifle was substantially outweighed by the danger of unfair prejudice. First, the possession of a firearm, generally speaking, is not a misdeed. See Williams v. State, 690 N.E.2d 162, 175 (Ind. 1997). Moreover, Fuentes was charged with possession of a handgun, and the State presented direct evidence that Fuentes shot at the pursuing officer. Thus, the jury was already aware that Fuentes possessed a firearm, and it is unlikely that the jury would "substantially overestimate" the value of evidence that Fuentes had in his trunk a weapon that he did not use. We therefore conclude that the trial court did not abuse its discretion in admitting evidence regarding the rifle found in the trunk of Fuentes's car.[3]

## II. Jury Instruction

Fuentes next claims that the trial court erred in its instruction to the jury to continue deliberating after the jury indicated that it was "split" on one of the counts. The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. O'Connell v. State, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012). To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise

---

[3] We also note that the police officer who transported Fuentes to jail testified *without objection* that Fuentes asked him "if [the police] had found an A.R. rifle in the trunk of the car that [Fuentes] was driving." Tr. p. 306. Thus, there was other evidence admitted without objection that Fuentes had an AR-15 in the trunk of his car. "It is well settled that any error in admission of evidence is harmless if the same or similar evidence has been admitted without objection." Lowery v. State, 478 N.E.2d 1214, 1228 (Ind. 1985).

6

mislead the jury. Id. We will consider jury instructions as a whole and in reference to each other, not in isolation. Id.

Here, during the jury's deliberations, the trial court received a question from the jury asking, "How do we proceed, if we are split on one Count?" Tr. p. 380. The trial court conferred with counsel for both parties. The trial court proposed two responses, and both counsel agreed to the following response, "May I suggest that you continue to deliberate to see if you are able to reach a verdict?" Id. The trial court gave this response to the jury, which subsequently returned its verdicts.

On appeal, Fuentes acknowledges that he did not object at trial to this response by the trial court. His claim on appeal is therefore waived. See Baker v. State, 948 N.E.2d 1169, 1178 (Ind. 2011) (noting that a defendant who fails to object to an instruction at trial waives any challenge to that instruction on appeal). Fuentes attempts to avoid the effect of his waiver by arguing that the trial court's response constituted fundamental error. As explained by our supreme court in Baker:

> The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal. In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. Harm is not shown by the fact that the defendant was ultimately convicted. Rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled.

Id. at 1178-79 (citations omitted).

Fuentes claims that the trial court's response to the jury constituted an impermissible "Allen" charge. In Lewis v. State, 424 N.E.2d 107, 109 (Ind. 1981), our supreme court explained, "The 'Allen charge,' a designation given to a supplemental charge given by a trial judge to an apparently deadlocked jury, is named after the first major case which considered such a charge, Allen v. United States, [164 U.S. 492 (1896)]." Thus, an Allen charge is an instruction given to urge an apparently deadlocked jury to reach a verdict. Hero v. State, 765 N.E.2d 599, 604 (Ind. Ct. App. 2002). Such additional instructions are closely scrutinized to ensure that the court did not coerce the jury into reaching a verdict that is not truly unanimous. Id.

There are at least two problems with Fuentes's claim in this regard. First, there is no indication that the jury was deadlocked. The jury began deliberations at 3:10 p.m. and sent its question to the trial court hardly more than an hour later, at 4:20 p.m. The jury's question did not mention the word deadlocked, nor did the discussion between the parties and the trial court. The jury simply indicated that they had "split," i.e. were not unanimous, as to one count and requested instructions on how to proceed.

Second, and more importantly, the trial court's response did not coerce the jury into reaching a non-unanimous verdict; it simply *suggested* to the jury that they continue to deliberate to see if they were able to reach a verdict. The trial court's reply did not place any pressure on the jury to force it to reach a verdict. Moreover, the jury had been instructed in the trial court's final instructions that:

> [t]he verdict must represent the considered judgment of each juror. To return any verdict, your decision must be unanimous. As jurors, you have the duty to consult with each other, and to deliberate with a view to reaching a unanimous agreement, if you can agree without violence to

8

individual judgment. You must each decide the case for yourself, but should do so only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own views. Change your opinion if you become convinced that it is wrong. *But do not surrender your honest belief as to the weight or effect of evidence only because of the opinion of your fellow jurors, or merely to return a verdict.*

Appellant's App. p. 66 (emphasis added). Under these facts and circumstances, we cannot say that the trial court's response to the jury's question amounted to fundamental error that made a fair trial impossible.

### III. Sufficiency of the Evidence

Lastly, Fuentes claims that the State failed to present evidence sufficient to convict him of attempted murder. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Corbin v. State, 840 N.E.2d 424, 428 (Ind. Ct. App. 2006). We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. Id. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. Id. "[A] reviewing court respects 'the jury's exclusive province to weigh conflicting evidence.'" Id. (quoting McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005)).

To convict Fuentes of attempted murder, the State was required to prove beyond a reasonable doubt that Fuentes engaged in conduct that constituted a substantial step toward intentionally killing another human being. Id. at 429 (citing Ind. Code §§ 35-41-5-1, 35-42-1-1). The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack and circumstances surrounding the crime. Id. And our supreme court held that

9

discharging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill. Id. (citing Leon v. State, 525 N.E.2d 331, 332 (Ind. 1988)).

On appeal, Fuentes claims that "there is no substantial evidence that Fuentes discharged his weapon in the direction of Officer Cichowicz." Appellant's Br. p. 21. Fuentes makes much of the fact that Officer Cichowicz did not actually see Fuentes fire the weapon. However, Fuentes ignores the evidence that Officer Cichowicz saw Fuentes point a gun at him at "head level," and that as Officer Cichowicz took cover, he heard Fuentes fire the gun. Tr. p. 229.

The fact that the officer did not directly see Fuentes fire the gun is not fatal to the State's case. Officer Cichowicz repeatedly testified that Fuentes pointed the gun at him, and as he took cover, the officer heard a gunshot. From this evidence, the jury could reasonably conclude that Fuentes discharged his weapon directly at Officer Cichowicz, at "head level," and that Fuentes specifically intended to kill Officer Cichowicz. See Leon, 525 N.E.2d at 332 (holding that evidence that defendant discharged a weapon in the direction of the victim was substantial evidence from which the jury could infer the intent to kill sufficient to support a conviction for attempted murder); Davis v. State, 558 N.E.2d 811, 811 (Ind. 1990) (holding that evidence was sufficient to support a conviction for attempted murder where defendant ran from the police, turned, and fired a shot which struck an automobile directly behind the pursuing officer); Reese v. State, 939 N.E.2d 695, 702 (Ind. Ct. App. 2011) (holding that evidence was sufficient to sustain a conviction for attempted murder where defendant, in an attempt to flee the police, fired three shots at the pursuing officer, two of which struck the officer); Perez v. State, 872

10

N.E.2d 208, 214 (Ind. Ct. App. 2007) (holding that evidence that defendant fired his gun directly at passengers inside a car was substantial evidence supporting inference that defendant intended to kill the victims).

Fuentes's citation to Henley v. State, 881 N.E.2d 639 (Ind. 2008), is unavailing. In that case, our supreme court held that the defendant had received ineffective assistance of appellate counsel for failing to properly present a claim of insufficient evidence to sustain the defendant's conviction for attempted murder. The court held that, if the claim had been properly presented, the conviction would have been reversed because there was no evidence that the defendant was aware of the presence of the police officer or actually pointed his weapon at the officer when he fired it. Id. at 652. Instead, the defendant was attempting to ward off an attack by the police dog. Id. This is far from what happened in the present case, where Fuentes pointed his gun directly at the pursing officer's head and fired his weapon.

In short, the State presented evidence from which the jury could reasonably conclude that Fuentes specifically intended to kill Officer Cichowicz when he fired the gun at him. Therefore, Fuentes's claim that the State did not present evidence sufficient to support his conviction for attempted murder fails.

**Conclusion**

The trial court did not abuse its discretion in admitting evidence that Fuentes had an AR-15 rifle in the trunk of the car in which he fled from the police. Nor did the trial court commit fundamental error by encouraging the jury to continue to deliberate to see if it could reach a unanimous verdict. Lastly, evidence that Fuentes pointed his gun in the

11

direction of the pursuing officer and at the level of the officer's head, then fired the gun was sufficient to establish Fuentes's intent to kill. Accordingly, the State presented evidence sufficient to support Fuentes's conviction for attempted murder.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.