Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2014, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**FREDERICK VAIANA**
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TAEVON SPIVEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1312-CR-1046 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT, CRIMINAL DIVISION 1
The Honorable Kurt Eisgruber, Judge
Cause No. 49G01-1301-MR-005601

**September 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Taevon Spivey appeals following his convictions of Murder,[1] class A felony Attempted Murder,[2] and class C felony Carrying a Handgun Without a License.[3] Spivey presents the following issue for our review: Did the State present sufficient evidence to support his murder and attempted murder convictions?

We affirm.

On the evening of January 9, 2013, Spivey was visiting with his girlfriend, Zsalia Cheatam, at her apartment in Indianapolis. Also at the apartment were Zsalia's brother, Rakim Cheatam, Zsalia's two young children, and two other men. At approximately 8:00 p.m., Donta Jackson and Regenal Ball knocked on the front door. Spivey asked who was there, and Jackson responded that he had come to get his cable converter box, which he had previously lent to Zsalia. Zsalia retrieved the box from a bedroom and handed it to Spivey. When Spivey opened the door to hand the box to Jackson, one of the men

---

[1] Ind. Code Ann. § 35-42-1-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

[2] Ind. Code Ann. § 34-41-5-1 (West, Westlaw 2012) (attempt); I.C. § 35-42-1-1 (murder). The version of the attempt statute in effect at the time this offense was committed classified attempted murder as a class A felony. This statute has since been revised and in its current form reclassifies the offense as a Level 1 felony. *See* Ind. Code Ann. § 35-41-5-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed on January 9, 2013, it retains the former classification.

[3] Ind. Code Ann. § 35-47-2-1 (West, Westlaw 2012) (providing that a person shall not carry a handgun without being licensed); I.C. § 35-47-2-23 (West, Westlaw 2012) (providing that a person who violates I.C. § 35-47-2-1 commits a class A misdemeanor, but that the offense is elevated to a class C felony if the person has a prior conviction under this subsection). At the time Spivey committed the instant offenses, I.C. 35-47-2-23 classified the offense as a class C felony. That statute has since been repealed, but its substance has been incorporated into the revised I.C. § 35-47-2-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The revised I.C. § 35-47-2-1 reclassifies Spivey's handgun offense as a Level 5 felony. The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed on January 9, 2013, it retains the former classification.

outside the door pointed a gun at him. Spivey then slammed the door and locked it, and the men outside started kicking the door.

Spivey then kicked out the screen of a front window in Zsalia's second-floor apartment and climbed out of the window and onto an awning covering the porch below. As Jackson and Ball were walking away, Spivey pulled out a handgun and fired down at them. Ball fell to the ground and Jackson returned fire. Spivey then jumped from the awning onto the ground, got into a car, and left.

Meanwhile, Deputies John Dicicco and Craig Tegeler of the Marion County Sheriff's Office, who were working off-duty as security guards in the apartment complex, were in the process of apprehending a trespasser when they heard gunfire. Specifically, they heard at least three gunshots, then a brief pause, followed by two more gunshots that sounded like they had come from a different gun. Jackson then came running around the side of one of the buildings. The deputies ordered him to stop, but he kept running and entered a nearby building. When the deputies caught Jackson in the basement of the building, he told them that his friend had been shot. The deputies handcuffed Jackson, who was at that time unarmed, and then walked toward the area of the shooting. The deputies found Ball on the ground, bleeding from a large wound in his shoulder. A few feet away, a handgun and two spent shell casings were found. Later forensic testing revealed that both shell casings were fired from the same gun. Ball was transported to the hospital, where he was later pronounced dead. An autopsy revealed that Ball died from a single gunshot wound, and that the bullet entered just above his collarbone, proceeded at a downward angle through his lung, and exited through his back.

A few days later, after receiving a tip, police returned to the apartment complex and recovered six spent shell casings from the top of the awning on which Spivey had stood when shooting at Ball and Jackson. Forensic testing established that all six of the casings were fired from the same gun, and not the same gun that fired the two casings found near Ball's body.

As a result of these events, the State charged Spivey with murder, attempted murder, and carrying a handgun without a license. Following a two-day jury trial, Spivey was found guilty as charged. The trial court sentenced Spivey to an aggregate term of sixty years. Spivey now appeals.

Spivey argues that the State presented insufficient evidence to support his murder and attempted murder convictions.[4] In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the verdict will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131 (Ind. Ct. App. 2008).

It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007).

---

[4] Spivey does not challenge his carrying a handgun without a license conviction.

4

Accordingly, the question on appeal is whether the inferences supporting the verdict were reasonable, not whether other, "more reasonable" inferences could have been drawn. *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind. 2004). Because reaching alternative inferences is the function of the trier of fact, we may not reverse a conviction merely because a different inference might plausibly be drawn from the evidence. *Thompson v. State*, 804 N.E.2d 1146.

Though Spivey purports to challenge both his murder and attempted murder convictions, the majority of his argument is directed toward the attempted murder conviction. We therefore address that argument first. To convict Spivey of attempted murder, the State was required to prove that Spivey engaged in conduct that constituted a substantial step toward intentionally killing Jackson. *See* I.C. §§ 34-41-5-1, 35-42-1-1; *Bethel v. State*, 730 N.E.2d 1242, 1246 (Ind. 2000) (noting that "it is well settled . . . that a conviction for attempted murder requires proof of specific intent to kill"). In the charging information, the State alleged that Spivey did so by shooting at Jackson. This court has explained that "[t]he intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack and circumstances surrounding the crime." *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. "[D]ischarging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill." *Id.*

Spivey first argues that the evidence is insufficient to establish that he acted with the specific intent to kill Jackson. In support of this argument, he asserts that there is no evidence that he fired a gun in Jackson's direction. We disagree. Mikishia Watson-

5

Robinson testified that she saw Spivey step out onto the awning and fire down at Jackson and Ball as they were walking away from the apartment building. Watson-Robinson testified further that Ball fell to the ground, and Jackson then returned fire. Although Watson-Robinson testified that she saw Spivey fire only once, other evidence supports an inference that Spivey fired multiple shots at the men. Specifically, six spent shell casings were recovered from the top of the awning, all of which had been fired from the same gun. Deputies Dicicco and Tegeler heard at least three gunshots, then a brief pause, followed by two more gunshots coming from a different weapon. Two shell casings that had been fired from the same gun were found on the ground near Ball's body. This evidence is consistent with Watson-Robinson's testimony that Spivey initiated the shooting and Jackson returned fire. We note further that the evidence established that Spivey had a motive to kill both Ball and Jackson. Just before Spivey shot at the men, they had come to Zsalia's apartment, and when Spivey answered the door, either Jackson or Ball pointed a gun at Spivey. When Spivey slammed the door, Ball and Jackson kicked at the door and tried to open it. Thus, the jury could have concluded that Spivey was acting in retaliation for this incident. We therefore conclude that the State presented sufficient evidence to support Spivey's attempted murder conviction.[5]

Turning now to Spivey's argument concerning his murder conviction, we first note that to convict Spivey of murder as charged, the State was required to prove that Spivey

---

[5] Spivey makes much of the trial court's statement, made at the sentencing hearing, that the evidence on the attempted murder conviction was "very lean." *Transcript* at 421. We note, however, that the jury was the finder of fact in this matter, and the trial court's assessment of the weight of the evidence is not controlling. Furthermore, the trial court did not state that the evidence was insufficient to support the conviction.

knowingly killed Ball. *See* I.C. § 35-42-1-1. Spivey does not dispute that he is the person who killed Ball. Instead, he argues that the State failed to prove that he did so knowingly. His argument in this regard is rather undeveloped; he simply suggests that the evidence "would support an act of recklessness rather than knowingly [sic] or intentional behavior." *Appellant's Brief* at 10. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). As we explained above with respect to Spivey's attempted murder conviction, the evidence favorable to the verdict establishes that Spivey climbed out of the apartment window, stepped onto the awning, and fired at Ball and Jackson as they walked away from the apartment. This evidence is more than sufficient to support an inference that Spivey acted knowingly in killing Ball.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.