**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 04 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRICE TYSHAN HOLDEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1404-CR-179 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause Nos. 84D01-1107-FB-2142, 84D01-1307-FC-2067

**December 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a jury trial, Brice Tyshan Holden was convicted of battery resulting in bodily injury to a pregnant woman,[1] a Class C felony, intimidation[2] as a Class D felony, and resisting law enforcement[3] as a Class A misdemeanor.[4] Holden appeals only his intimidation conviction, contending that it is not supported by sufficient evidence.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 4, 2013, Holden and Amber Torres, who was pregnant with Holden's child, were at a friend's house near 21st Street and Elm Street in Terre Haute when the two got into an argument. Torres was "a little bit" afraid that Holden was going to hurt her and called the police on her cell phone. *Tr.* at 84. Holden, who had an outstanding warrant for his arrest, "snatched" Torres's cell phone and "broke it." *Id.* at 85. After the altercation, Holden left the house. Torres did not know where Holden had gone, but soon thereafter, she also left her friend's house and began to walk towards Rose Park.

Upon reaching an alley on 15th Street, between Chase and Elm Streets, Torres saw Holden waiting for her. Holden ordered Torres, "[C]ome here." *Id.* at 86. Holden also told Torres that "if [she] didn't come over there, there was going to be *a problem*." *Id.* at 86-87 (emphasis added).

---

[1] *See* Ind. Code § 35-42-2-1(a)(8).

[2] *See* Ind. Code § 35-45-2-1.

[3] *See* Ind. Code § 35-44.1-3-1.

[4] We note that, effective July 1, 2014, new versions of the statutes pertaining to battery, intimidation, and resisting law enforcement have been enacted. Because Holden committed his crimes prior to July 1, 2014, we apply the statutes in effect at the time he committed his crimes.

Responding to a domestic violence call, Office David Brewer with the Terre Haute Police Department arrived at the alley to discover Holden standing over Torres, who was lying on the ground. Holden was "kind of yelling a little bit as if - he was being aggressive towards her." *Id*. at 41. Torres was crying and "her hands were pretty much over her face." *Id*. Torres was calling out, "help me, help me, he's beating me, he's hitting [sic]." *Id*. Torres was "[e]xtremely frantic" and "terrified," "she didn't want to be anywhere near [Holden]." *Id*. at 56. Officer Brewer observed that Torres had red marks on her neck and dried blood and cuts on her lips. *Id*. at 54.

Officer Brewer separated the two and began to ask Holden questions concerning the situation. Holden, however, refused to identify himself or answer the officer's questions. When Officer Brewer attempted to hold Holden until the facts could be sorted out, Holden "took off running." *Id*. at 43. Officer Brewer gave chase, caught, and arrested Holden. When asked, Holden explained that he had tried to run because "[h]e knew he had a warrant," and he was scared. *Id*. at 49. At the time of his arrest, Holden was on probation for a previous robbery conviction, Cause No. 84D01-1107-FB-2142 ("Cause No. 2142"); therefore, the State filed a notice of probation violation in that case, citing the instant battery offense as the violation.

The State charged Holden with battery as a Class C felony; strangulation, a Class D felony; intimidation as a Class D felony; resisting law enforcement as a Class A misdemeanor; and interference with the reporting of a crime, a Class A misdemeanor. Holden was tried to a jury on February 24-25, 2014, and was found guilty of battery, intimidation, and resisting law enforcement. The jury found Holden not guilty of the

3

crimes of strangulation and interference with the reporting of a crime.

At the March 25, 2014 sentencing hearing, Holden admitted to the probation violation and was sentenced to three of his four years of suspended time under Cause No. 2142. For the instant offenses, the trial court sentenced Holden to an aggregate sentence of five years of incarceration, which consisted of five years for the battery conviction, two years for the intimidation conviction, and one year for the resisting conviction. All three sentences were ordered to be served concurrent with each other but consecutive to Holden's three-year sentence under Cause No. 2142. Holden now appeals.

## DISCUSSION AND DECISION

Holden's only contention on appeal is that the State failed to present sufficient evidence to sustain his conviction for intimidation. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied.* We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from that evidence. *Id.* We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Id.* "[A] reviewing court respects 'the jury's exclusive province to weigh conflicting evidence.'" *Id.* (quoting *Corbin v. State*, 840 N.E.2d 424, 428 (Ind. Ct. App. 2006)). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State,* 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

To convict Holden of intimidation as charged, the State was required to prove beyond a reasonable doubt that he communicated a threat to Torres with the intent that she

4

engage in conduct against her will and that the threat was "to commit a forcible felony." Ind. Code § 35-45-2-1. Torres testified, "[Holden] said that if I didn't come over there, there was going to be a problem." *Tr*. at 87. Holden argues that, in this statement, "he neither threatened to hit [Torres] or beat her," nor did he threaten "to injure or confine [Torres] if she did not come to him." *Appellant's Br*. at 4, 6. Holden contends that there was insufficient evidence that he "communicated any threat, much less a threat to commit a forcible felony." *Id*. at 4. We disagree.

The testimony at trial revealed that Holden and Torres were in a relationship, Torres was pregnant, and Holden was the father of her child. On July 4, 2013, the couple was at a friend's house in Terre Haute, and Holden had been drinking. *Tr*. at 84. Torres became upset that Holden was paying too much attention to another woman, and the two "had some words." *Id*. Torres testified that, at some point, she became "a little bit" afraid that Holden was going to hurt her. *Id*. This fear prompted Torres to call 911 from her cell phone. *Id*. Holden, who had an outstanding warrant, "snatched" Torres's phone and broke it.[5] *Id*. at 85. Torres testified that "after all that stuff happened, he just like disappear [sic]," so she "just started walkin' towards Rose Park." *Id*.

While walking, Torres saw a police car that was responding to her previous 911 call. Since Torres did not know Holden's current location and no longer thought she was in any real danger, Torres decided not to flag down the patrol car. *Id*. at 86. Instead, Torres

---

[5] This was not the first time that Torres had called the police in reaction to Holden's behavior. At trial, Torres explained, "[H]onestly, every time we got into it, I knew he had a warrant out for his arrest, so every time we got into it, I always used that against him, so it was more of I was just like, oh, you're about to go to jail today. I'm tired of this and stuff like that, and yeah, I did try to call the police." *Tr*. at 84.

continued to walk near Rose Park and along 15th Street toward Chase Street. Upon reaching the alley between Chase and Elm Streets, Torres saw Holden waiting for her. Holden ordered Torres, "[C]ome here." *Id.* Holden also told Torres that "if [she] didn't come over there, there was going to be *a problem.*" *Id.* at 86-87 (emphasis added).

Torres testified that, earlier that day, Holden had hit Torres with a stick, which resulted in bruising to her left shoulder, neck, and lip. *Id.* at 89. At trial she explained, "The *problem* was going to be if I didn't come in the alley we was probably going to have a fallout, and it ended up that way." *Id.* at 87 (emphasis added). Torres went into the alley, and as she suspected, Holden pushed her into a fence causing her to fall to the ground. Holden also grabbed and dragged Torres by the hair, choked her until she felt like she had stopped breathing, and "smacked" her on her jaw and her ear. *Id.* at 87-88, 102. Torres stated that she was sore for almost a week.

The jury was instructed that before convicting Holden of intimidation, it would have to find that 1) Holden 2) communicated a threat to Torres, 3) with intent that Torres engage in conduct against her will, and 4) the threat was to commit a forcible felony, that being Battery Resulting in Injury to a Pregnant Woman. *Appellant's App.* at 104. The determination of whether Holden's words were a threat is a factual question for the jury. Our Supreme Court recently noted:

> [C]ourts have emphasized that assessing true threats is highly dependent on context. As the Seventh Circuit has long recognized, "Written words or phrases take their character as threatening or harmless from the context in which they are used, measured by the common experience of the society in which they are published." Particularly with implied threats, then, juries are not bound to "rigid adherence to the literal meaning of a communication" while turning a blind eye "to its reasonable connotations derived from its

6

ambience"—because doing so "would render [prohibitions on threats] powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat." Nor are juries "preclude[d from] finding . . . a threat any time the defendant can conjure up some conceivable alternative explanation for his words." The true meaning of a facially ambiguous threat is for a jury to decide, as long as the State presents "sufficient extrinsic evidence, capable of showing beyond a reasonable doubt that an ordinary and reasonable recipient *familiar with the context* of the [statement] would interpret it as a threat."

*Brewington v. State*, 7 N.E.3d 946, 963-64 (Ind. 2014) (citations omitted).

The evidence revealed that Holden and Torres had been fighting earlier in the day of July 4, 2013. Holden had even hit Torres with a stick causing bruising. *Tr*. at 89. Torres knew that "the problem" was going to be that if she did not go into the alley as he said, then they were going to have "a fallout" or altercation, which is what occurred. *Id*. at 87. When Torres went into the alley, Holden pushed her into a fence, grabbed and dragged her by the hair, put his hands around her throat and caused her to lose her breath, and smacked Torres on the jaw and ear. *Id*. at 87-88. When put into context, the word "problem" was reasonably interpreted by the jury as being the threat to commit a forcible felony, that being Battery Resulting in Injury to a Pregnant Woman. We find the guilty verdict for intimidation "*could* have been reached based on reasonable inferences that may be drawn from the evidence presented." *Baker,* 968 N.E.2d at 229 (emphasis in original).

Affirmed.

BAKER, J., and ROBB, J., concur.

7