## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 06 2016, 5:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paula M. Sauer
Danville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jamar Sheets,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 6, 2016<br><br>Court of Appeals Case No.<br>32A04-1512-CR-2190<br><br>Appeal from the<br>Hendricks Superior Court<br><br>The Honorable<br>Mark A. Smith, Judge<br><br>Trial Court Cause No.<br>32D04-1409-F6-200 |

**Kirsch, Judge.**

[1] Jamar Sheets ("Sheets") was convicted after a jury trial of theft[1] as a Level 6 felony. He appeals, raising the following restated issue for our review: whether the State presented sufficient evidence to support his conviction for theft, specifically (1) whether he intended to deprive the victim of the value or use of a wallet and cell phone, and (2) whether he exerted unauthorized control over the property.

[2] We affirm.

## Facts and Procedural History

[3] Around 6:15 a.m. on September 13, 2014, Steve Krause ("Krause"), his daughter, and some of his co-workers from the Indiana Department of Correction were on their way to a softball tournament at Hummel Park in Plainfield, Indiana. They stopped at a nearby McDonald's restaurant to eat breakfast. Krause approached the counter to order, and because he was wearing sweatpants with no pockets, he placed his wallet and cell phone on the counter. When his food was ready, Krause sat down at one of the tables and began eating his breakfast; however, he had accidentally left his wallet and cell phone on the counter.

[4] A short time later, Sheets and his co-worker approached the counter to order and noticed the wallet and cell phone lying there. Sheets put both items in his

---

[1] *See* Ind. Code § 35-43-4-2.

jacket pocket, and, after receiving the food his co-worker ordered, he and his co-worker returned to work. Sheets left the wallet and cell phone in his truck.

[5] After only taking a few bites of his breakfast, Krause realized that he had accidentally left his wallet and cell phone at the counter. He went to the counter, noticed his belongings were not there, and asked an employee if they had been turned in. Krause and his co-workers then searched the restaurant, but they were unable to locate the items. Krause called the police, who came to the restaurant and took a report. After speaking with the police, Krause went to the softball tournament. About thirty minutes after his belongings were taken, Krause's girlfriend notified him that someone had posted a message to Krause on his Facebook account, which stated, "your phone is [sic] good hands now and oh by the way he is a donor." *Tr.* at 160, 170. A second post was also made, but Krause could not remember what it said. Neither of the posts contained any identifying information as to how and where Krause could retrieve his belongings. After seeing the Facebook post, Krause immediately cancelled his credit cards and deactivated his cell phone.

[6] Later that day, Plainfield Police Department Sergeant Chad Parks ("Sergeant Parks") went back to the McDonald's to retrieve surveillance video of the restaurant from that morning. Sergeant Parks viewed the video and observed Sheets pick up Krause's wallet and cell phone and put them into his jacket pocket. The manager of the restaurant, Angela Pruitt ("Pruitt"), recognized Sheets as a regular customer and agreed to call the police if she saw him again.

After work that day, Sheets went to his mother's house to pick up his children and told his mother about finding the wallet and cell phone. Sheets removed all of the contents, but the cash from the wallet, including Krause's debit cards, and put the items in two separate envelopes addressed to Krause's home address. Several days later, Krause received the envelopes from Sheets. The envelopes had no identifying information and did not contain Krause's wallet or cell phone. Krause called Sergeant Parks to update him regarding this.

Approximately ten days after Sheets took Krause's belongings, Sergeant Parks received a call from Pruitt. She told Sergeant Parks that Sheets had come back into the McDonald's, and she gave Sergeant Parks a description of Sheets's vehicle and his license plate number. A few days later, while out patrolling, Sergeant Parks saw Sheets's vehicle pull into a gas station. Sergeant Parks arrested Sheets at that time. Krause's cell phone was recovered, but his wallet and the cash from inside the wallet were never recovered.

On September 24, 2014, the State charged Sheets with theft as a Class A misdemeanor and theft as a Level 6 felony. On August 24, 2015, a jury trial occurred, at the conclusion of which, Sheets was found guilty as charged. The trial court entered judgment on one count of theft as a Level 6 felony and sentenced Sheets to 730 days with 728 days suspended and credit for time served. Sheets now appeals.

## Discussion and Decision

[10] The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Fuentes*, 10 N.E.3d at 75. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012). As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[11] Sheets argues that insufficient evidence was presented to support his conviction for theft. In order to convict him of theft as a Level 6 felony, the State was required to prove beyond a reasonable doubt that Sheets knowingly or intentionally exerted unauthorized control over Krause's property, with intent to deprive Krause of any part of its value or use and that Sheets had a prior unrelated conviction for either theft or conversion. Ind. Code § 35-43-4-2(a)(1)(C).

[12] Sheets first contends that the State failed to present sufficient evidence to support his conviction for theft because there was insufficient evidence that he intended to deprive Krause of the use or value of his wallet and cell phone, arguing that his behavior did not support such a conclusion. He maintains that the evidence showed that he did not use or attempt to use Krause's debit cards and that he did not use, sell, or dispose of Krause's cell phone. Sheets also alleges that the evidence established that he mailed the contents of Krause's wallet to him, and Sheets claims that he told his mother to include a note with Sheets's name and number in the envelopes. Sheets further asserts that the evidence showed that he made no effort to dispose of Krause's property or comingle it with his own property. Sheets argues that this evidence demonstrated that he did not intend to deprive Krause of his property.

[13] "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). Intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Lee v. State*, 973 N.E.2d 1207, 1210 (Ind. Ct. App. 2012), *trans. denied*. The fact finder is entitled to infer intent from the surrounding circumstances. *Id*. Intent may be proved by circumstantial evidence. *Id*.

[14] In the present case, the evidence most favorable to the verdict shows that, a short time after Krause accidentally left his wallet and cell phone on the counter at McDonald's, Sheets picked up the items and placed them into the pocket of his jacket. Sheets did not alert the McDonald's staff to the items he had found,

hand the items over to the staff to hold them for the owner, or leave his name and contact information in case the owner came back looking for his belongings. Further, even though Sheets had access to Krause's cell phone and the contact information contained on the phone, he did not attempt to notify either Krause or any of his friends that he had found Krause's belongings. Additionally, although Sheets mailed items from Krause's wallet back to Krause, he never returned Krause's wallet and cell phone nor did he include any identifying information on the outside of the envelope or inside the envelope that would have enabled Krause to contact him. The evidence presented showed that Sheets never contacted the police regarding finding Krause's property, and despite having Krause's address, Sheets never attempted to go to the residence to return the items. Krause's cell phone was not recovered until after Sheets's arrest, which was over ten days after Sheets took the items. Krause's wallet and the cash inside were never recovered.

[15] Sheets claims that he asked his mother to include a sticky note with his number on it so Krause could contact him. *Tr.* at 229, 243, 254; *Appellant's Br.* at 10. However, the envelope and its contents was admitted into evidence at trial, and no note was contained in the envelope. *Tr.* at 165-66; *State's Exs.* 1-4. Under our standard of review, we are constrained to only look to the evidence most favorable to the verdict and to consider conflicting evidence in the light most favorable to the trial court's ruling. *Fuentes*, 10 N.E.3d at 75; *Oster*, 992 N.E.2d at 875. Therefore, viewing the evidence presented at trial under this standard, we conclude that the State presented sufficient evidence that Sheets intended to

deprive Krause of the use or value of his property. Sheets's arguments to the contrary are requests for this court to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Boggs*, 928 N.E.2d at 864.

[16] Sheets next argues that the State presented insufficient evidence to support his conviction because the evidence showed that he had a reasonable belief that his control over Krause's property was authorized. In order to convict him, the State had to prove that he knowingly or intentionally exerted unauthorized control over Krause's property. Ind. Code § 35-43-4-2(a). Sheets contends that, because when he took Krause's property he was picking up lost property and attempting to return it, he had Krause's implied consent to control Krause's belongings until the items could be returned to Krause. Therefore, Sheets asserts that he did not exert unauthorized control over Krause's property.

[17] The term "unauthorized" is defined in Indiana Code section 35-43-4-1. Pertinent to the present case, "a person's control over property of another person is 'unauthorized' if it is exerted: (1) without the other person's consent." Ind. Code § 35-43-4-1(b)(1).

[18] Here, the evidence most favorable to the verdict showed that when Sheets picked up Krause's wallet and cell phone from the counter at McDonald's, he concealed the items in the pocket of his jacket. Krause testified at trial that he did not give anyone authorization to have his wallet or cell phone. *Tr.* at 167. Further, when Krause determined that his belongings had been stolen and not lost, he immediately cancelled his credit and debit cards and his cell phone

service so no one could use them. Sheets claims that he had implied consent to keep Krause's belongings because he was attempting to return them to Krause. However, as Sheets concedes, implied consent is not a recognized defense to theft in Indiana. *Appellant's Br.* at 12-13. Additionally, the evidence presented did not support the conclusion that Sheets was trying to return the items to Krause. At no time after he took the wallet and cell phone, did Sheets contact Krause with information as to how to get in touch with Sheets to get his belongings back. Sheets did not ever contact any of the contact numbers in Krause's phone to alert them that he found Krause's things nor did he post any identifying information on Krause's Facebook account despite having access to it through the cell phone. Although Sheets contends that he intended to provide his name and number in the envelopes sent to Krause, the evidence presented was that no contact information was included. Furthermore, although Krause's cell phone was eventually recovered after Sheets was arrested, Krause's wallet and the cash inside were never recovered. Based on the evidence presented at trial, we conclude that sufficient evidence was presented to prove that Sheets exerted unauthorized control over Krause's property. Sheets's challenges to the contrary are requests for us to reweigh the evidence, which cannot do on appeal. *Boggs*, 928 N.E.2d at 864. We, therefore, conclude that the State presented sufficient evidence to support Sheets's conviction for theft.

[19]     Affirmed.

Riley, J., and Pyle, J., concur.