# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 16 2016, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremias Manriquez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 16, 2016

Court of Appeals Case No.
71A05-1604-CR-802

Appeal from the
St. Joseph Superior Court

The Honorable
Elizabeth C. Hurley, Judge

Trial Court Cause No.
71D08-1509-F6-628

**Kirsch, Judge.**

[1] Jeremias Manriquez ("Manriquez") was convicted after a jury trial of two counts of intimidation,[1] each as a Level 6 felony, two counts of battery,[2] each as a Class A misdemeanor, one count of criminal mischief[3] as a Class B misdemeanor, and one count of resisting law enforcement[4] as a Class A misdemeanor. The trial court sentenced him to an aggregate four-year executed sentence. On appeal, Manriquez appeals only his conviction for one count of intimidation, contending that the State failed to present sufficient evidence to support his conviction for Level 6 felony intimidation.

[2] We affirm.

## Facts and Procedural History

[3] On September 4, 2015, Manriquez went to the Pass Pets store located inside the University Park Mall in Mishawaka, St. Joseph County, Indiana. While inside the store, after walking behind an employee and making gestures to the customer who the employee was speaking with, Manriquez began picking up the store's rabbits by the ears and the tops of their heads. One of the store employees, Isabella Hess ("Hess") saw Manriquez's treatment of the rabbits and asked him to leave the store.

---

[1] *See* Ind. Code § 35-45-2-1.

[2] *See* Ind. Code § 35-42-2-1.

[3] *See* Ind. Code § 35-42-1-2.

[4] *See* Ind. Code § 35-44.1-3-1.

[4] Manriquez acted very rude to Hess, using profanity and calling her a "dumb bitch." *Tr*. at 18, 27. Manriquez approached Hess and "got in [her] face a little bit," yelling things at her. *Id*. at 15. Manriquez then walked toward the store entrance and stopped. Hess told him to leave before the store employees called the police and that her father was a police officer. Manriquez then stated "that he didn't care who [Hess] was, that he would slit her throat in the parking lot." *Id*. at 16. Hess felt threatened and believed Manriquez's threats; she believed his posture showed he meant what he stated because he puffed out his chest and straightened his posture. *Id*. at 18, 19.

[5] The store manager, Abby Raven ("Raven"), was not inside the store when the altercation began, but was summoned in shortly after by another employee. When Raven heard Manriquez tell Hess he would see her in the parking lot, Raven asked Manriquez to leave the store. *Id*. at 28, 36. He continued to be loud and aggressive. When Manriquez refused to leave but was near the entrance to the store, Raven walked to the entrance to close the door due to her concern for the safety of the store's employees and customers. Manriquez punched Raven in the face. He then exited the store and the mall through a door near the pet store and ran to Macy's, which is located on the other side of the mall.

[6] Raven told one of the store's employees to call the mall security officers. Mishawaka Police Department Officer Steve Egendoerfer ("Officer Egendoerfer") and mall security officer Thomas Erickson ("Erickson") were the first to respond to the call. Both were wearing uniforms and badges. Officer

Egendoerfer saw Manriquez enter Macy's and told Erickson, who located Manriquez inside Macy's and ordered him to stop. Manriquez nodded his head "okay," and when Erickson approached him, Manriquez punched Erickson in the face and tried to tackle him. *Id*. at 42-43. Officer Egendoerfer arrived and observed Erickson trying to subdue Manriquez by placing him on his stomach. During this interaction, Manriquez threatened to kill both Erickson and Officer Egendoerfer and told them that they were "going to pay." *Id*. at 86. Manriquez also said that he would have people "on the outside" find Officer Egendoerfer's family. *Id*. at 47, 86. Manriquez also threatened to hit Erickson again if Erickson did not release him. *Id*. at 46-47.

[7] Manriquez continued to struggle and resist both Erickson and Officer Egendoerfer's attempts to restrain him. A third officer arrived, but the officers were still unable to subdue Manriquez. Three more officers arrived on the scene shortly thereafter, and as the six officers began to move Manriquez outside, he kicked one of the officers. They eventually were able to get Manriquez inside a patrol car, but once inside, he continued to struggle and kick, which resulted in damage to the police vehicle. Manriquez remained combative when he arrived at the jail, and several deputies had to assist in removing him from the patrol car.

[8] The State charged Manriquez with two counts of Level 6 felony intimidation, two counts of Class A misdemeanor battery, one count of Class B misdemeanor criminal mischief, and one count of Class A misdemeanor resisting law enforcement. A jury trial was held, and Manriquez was found guilty on all

counts.  The trial court sentenced him to an aggregate sentence of four years executed.  Manriquez now appeals his conviction for one count of intimidation.

## Discussion and Decision

[9]     The deferential standard of review for sufficiency claims is well settled.  When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses.  *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*.  We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence.  *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*.  We also consider conflicting evidence in the light most favorable to the trial court's ruling.  *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*.  We will not disturb the jury's verdict if there is substantial evidence of probative value to support it.  *Fuentes*, 10 N.E.3d at 75.  We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012).  As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence."  *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[10]    Manriquez argues that the State failed to present sufficient evidence to support his conviction for the one count of Level 6 felony intimidation relating to Hess.[5]

---

[5] Manriquez does not challenge the sufficiency of the evidence for his remaining convictions and concedes that the evidence presented was sufficient on all those counts.  *Appellant's Br.* at 4 n.1.

He specifically contends that insufficient evidence was presented that he threatened Hess. Although Manriquez concedes that Hess testified that he threatened to slit her throat, he alleges that such a threat was not supported by the testimony of Raven, who did not testify that she heard the threat despite being present. Manriquez, therefore, asserts that his conviction for intimidation as related to Hess should be reversed.

[11] In order to convict Manriquez of intimidation as a Level 6 felony, the State was required to prove that he communicated a threat to Hess with the intent that she be placed in fear of retaliation for a prior lawful act and that the threat was to commit a forcible felony. Ind. Code § 35-45-2-1(a)(2), (b)(1). "It is well-established that 'the uncorroborated testimony of one witness may be sufficient by itself to sustain a conviction on appeal.'" *Scott v. State*, 871 N.E.2d 341, 343 (Ind. Ct. App. 2007), *trans. denied*.

[12] Manriquez's only challenge to the sufficiency of the evidence to support his conviction is that the State failed to prove that he communicated a threat to Hess. The evidence presented at his jury trial showed that, while in the pet store, Manriquez was observed inappropriately picking up the rabbits by their ears and the tops of their heads. Hess asked Manriquez to leave the store, and he began acting very rude to Hess, using profanity, and calling her a "dumb bitch." *Tr.* at 18, 27. Manriquez approached Hess and "got in [her] face a little bit," yelling things at her. *Id.* at 15. Hess then told Manriquez to leave the store before the store employees called the police and that her father was a police officer. Manriquez responded "that he didn't care who [Hess] was, that

he would slit her throat in the parking lot." *Id.* at 16. Hess testified that she felt threatened and believed Manriquez's threats because he puffed out his chest and straightened his posture, which she took as a sign that he meant what he stated. *Id.* at 18, 19.

[13] Manriquez contends that Hess's testimony was not sufficient to prove that he threatened her because Raven did not testify that she heard the threat. However, Raven testified that she was not inside the store when the altercation between Manriquez and Hess began and was summoned in shortly after by another employee. *Id.* at 27. Although Raven did not testify that she heard Manriquez threaten to slit Hess's throat in the parking lot, she did testify that she heard Manriquez tell Hess he would see her in the parking lot; at that time, Raven asked Manriquez to leave the store. *Id.* at 28, 36. We, therefore, conclude that the State presented sufficient evidence to support Manriquez's conviction for intimidation as a Level 6 felony. His arguments to the contrary are merely a request to reweigh the evidence, which we cannot do. *Boggs*, 928 N.E.2d at 864.

[14] Affirmed.

May, J., and Crone, J., concur.