# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 05 2016, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Corey L. Scott
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey Brinkley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 5, 2016<br><br>Court of Appeals Case No.<br>49A04-1511-CR-1920<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Angela Dow Davis, Judge<br><br>Trial Court Cause No.<br>49G16-1401-FD-994 |

**Kirsch, Judge.**

[1] Jeffrey Brinkley ("Brinkley") was convicted after a jury trial of domestic battery[1] as a Class D felony, domestic battery[2] as a Class A misdemeanor, and battery[3] as a Class A misdemeanor[4] and was sentenced to an aggregate term of 675 days executed. Brinkley appeals and raises the following issue for our review: whether the State presented sufficient evidence to support his convictions.

[2] We affirm.

## Facts and Procedural History

[3] On December 27, 2013, Rhea Miller ("Miller") lived in Indianapolis, Indiana with her two children, T.O. and E.B. Brinkley and Miller had previously dated, and Brinkley is the father of E.B. On December 27, Brinkley lived with Miller, but had multiple other girlfriends and was "in and out" of Miller's house, staying "wherever he wanted." *Tr.* at 77-78. Miller left the house at around 9:00 p.m. to visit her then-boyfriend and returned back to the house right before midnight. At that time, E.B. was awake, playing video games, and T.O. was asleep in her room. About ten minutes after Miller arrived home, Brinkley returned to the house.

---

[1] *See* Ind. Code § 35-42-2-1.3(b).

[2] *See* Ind. Code § 35-42-2-1.3(a).

[3] *See* Ind. Code § 35-42-2-1(a)(1)(A).

[4] We note that, effective July 1, 2014, a new version of these criminal statutes was enacted. Because Brinkley committed his crimes prior to July 1, 2014, we will apply the statutes in effect at the time he committed his crimes.

[4] When Brinkley entered the house, he went to the living room and began "fussing and cussing" and attempted to take Miller's cell phone from her. *Id*. at 39. Brinkley yelled at Miller to give him her phone, and Miller refused as she tried to keep the phone away from him. Brinkley was angry and became enraged when he learned Miller had been at her boyfriend's house. Miller left the living room and walked into the bedroom with Brinkley following her. E.B. was still in the living room, and the argument between Brinkley and Miller was loud enough he could hear it. While Miller stood in the bedroom doorway, Brinkley was able to grab Miller's cell phone from her hand. Miller snatched her phone back, and Brinkley then hit Miller multiple times in the face. This caused Miller to feel pain, "like a stinging sensation and [she] heard something like ringing in [her] ear, a burning sensation." *Id*. at 43. Miller was screaming, yelling, and trying to fight back as Brinkley hit her. They then "tussled back and forth," ending up in T.O.'s room, and Miller fell onto the floor. *Id*. at 44. Brinkley was "standing over [Miller] hitting" her and "arguing and cussing." *Id*. at 46, 47. Miller yelled for T.O. to call the police.

[5] T.O. jumped off of the bed and observed Brinkley standing over Miller. T.O. also saw E.B. standing in the hallway near the bathroom, watching Brinkley and Miller. T.O. grabbed a fan and hit Brinkley with it, and Brinkley ran out of the bedroom, down the hallway, and out the front door. T.O. chased Brinkley all the way to the front porch and then stopped. As Brinkley ran out of the house, he passed E.B. standing in the hallway. Although Brinkley had

undergone surgery to repair his ankle on December 20, 2013, he was able to walk without using a cane, walker, or crutches at the time of the incident.

[6] T.O. called 911, and Indianapolis Metropolitan Police Department Officer Jeffrey Gray ("Officer Gray") responded to Miller's home. Miller told Officer Gray that she had been "struck in the upper body five times causing her pain" and that she had ringing in her right ear. *Id*. at 98. When she spoke with Officer Gray, Miller was "nervous, scared, upset," and she had a bruise or bump on the side of her hand from her fight with Brinkley. *Id*. at 55, 57. On the night of the altercation, T.O. noticed a mark on Miller's upper cheek. Two days after the incident, Miller developed a black eye.

[7] The State charged Brinkley with Class D felony domestic battery, Class A misdemeanor domestic battery, and two counts of Class A misdemeanor battery. On the morning of the jury trial, the State dismissed one of the Class A misdemeanor battery charges. A jury found Brinkley guilty of the remaining charges, and the trial court sentenced him to an aggregate sentence of 675 days executed. Brinkley now appeals.

## Discussion and Decision

[8] The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be

drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Fuentes*, 10 N.E.3d at 75. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012). As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[9] Brinkley argues that the State failed to present sufficient evidence to support his convictions. He contends specifically that, although Miller reported being repeatedly struck, she had no visible injuries and was calm when speaking to the police. Brinkley also asserts that he produced evidence at trial that he had recently undergone surgery prior to the incident and was not physically capable of engaging in the type of behavior alleged by Miller.

[10] In order to convict Brinkley of domestic battery as a Class D felony, the State was required to prove that he knowingly or intentionally touched Miller, who was living as if a spouse of Brinkley and/or had a child in common with Brinkley, in a rude, insolent, or angry manner that resulted in bodily injury to Miller, and that Brinkley committed the offense in the physical presence of a child less than sixteen years of age, knowing that the child was present and might be able to see or hear the offense. Ind. Code § 35-42-2-1.3(b)(2). In order to convict Brinkley of domestic battery as a Class A misdemeanor, the State

was required to prove that he knowingly or intentionally touched Miller, who was living as if a spouse of Brinkley and/or had a child in common with Brinkley, in a rude, insolent, or angry manner that resulted in bodily injury to Miller. Ind. Code § 35-42-2-1.3(a). In order to convict Brinkley of battery as a Class A misdemeanor, the State was required to prove that he knowingly or intentionally touched Miller in a rude, insolent, or angry manner that resulted in bodily injury to Miller. Ind. Code § 35-42-2-1(a)(1)(A).

[11] In the present case, considering the evidence most favorable to the verdict, Miller testified that Brinkley, with whom she had a child, struck her in the face multiple times, which caused her to feel pain. *Tr.* at 42. She stated that the pain felt like "a stinging sensation" and that she heard "something like a ringing in [her] ear" and felt "a burning sensation." *Id*. at 43. Miller also testified that she developed a black eye within two days after Brinkley hit her. *Id*. at 55. "A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). Therefore, Miller's testimony alone was enough to support Brinkley's convictions. There was, however, additional evidence to partially corroborate Miller's testimony. Officer Gray testified that Miller told him that "she was struck in the upper body five times causing her pain and she ha[d] ringing in her right ear." *Tr.* at 98. T.O. also testified that she was awoken by a loud boom and saw Brinkley standing over Miller in the doorway area of her room. *Id*. at 82-83. Additionally, T.O. observed a mark on Miller's upper

cheek after the battery occurred. *Id*. at 89. This evidence was sufficient to support Brinkley's convictions.

[12] To the extent that Brinkley is arguing that he could not have committed the charged offenses because he "was in no physical condition to be fighting, rolling around on the floor, or running on an ankle that had been operated on the previous week," *Appellant's Br*. at 9, he is merely requesting this court to reweigh the evidence, which we cannot do on appeal. *Boggs*, 928 N.E.2d at 864. Although Brinkley had undergone surgery on his ankle on December 20, 2013, both Miller and T.O. testified that he was able to walk without the assistance of a cane, crutches, or a walker and was able to drive the day of the battery. *Tr*. at 51, 86-87. As he contends in his appellate brief, at trial, Brinkley did introduce medical records concerning his surgery. However, it is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Hape v. State*, 903 N.E.2d 977, 997 (Ind. Ct. App. 2009), *trans. denied*. The jury had the opportunity to consider Brinkley's evidence and to either accept or reject it, and we do not review its determination on appeal. We, therefore, conclude that the State presented sufficient evidence to support Brinkley's convictions.

[13] Affirmed.

[14] May, J., and Crone, J., concur.