ATTORNEYS FOR APPELLANT
Michael C. Borschel
Fishers, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana



FILED
Mar 18 2014, 12:00 pm
CLERK
of the supreme court,
court of appeals and
tax court



# In the
# Indiana Supreme Court

No. 49S04-1304-CR-249

DAVID S. DELAGRANGE,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G03-1003-FC-15460
The Honorable Sheila A. Carlisle, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04-1203-CR-144

**March 18, 2014**

**Massa, Justice.**

David Delagrange here appeals his convictions for child exploitation, arguing the evidence was insufficient to support them. We affirm.

**Facts and Procedural History**

On February 27, 2010, Delagrange left his home in Fort Wayne and drove approximately one hundred miles to the Castleton Square Mall in Indianapolis. He then wandered around for nearly eight hours trying to take "upskirt" photographs of women and girls as they were shopping. After he selected a particular victim, he would approach her from behind and try to inveigle his foot between her legs. Once in position, he would reach into his pocket and pull on a piece of fishing line attached to the cuff of his pants leg, thereby exposing a video camera attached to his shoe. By means of this procedure, Delagrange collected approximately seven minutes of actual images.

Unsurprisingly, Delagrange's unusual behavior attracted attention, and a store employee contacted police. After a brief confrontation, an officer arrested Delagrange and discovered his camera system. Detectives later identified four girls from the recorded images: K.V., T.G., and C.B., all aged seventeen, and A.K., aged 15. Those images depicted "the area under the skirt and between the legs" of the victims, but did not depict any "uncovered genitals." Ex. at 5.

The State charged Delagrange with four counts of Class C felony attempted child exploitation, ten counts of Class D felony voyeurism, and one count of Class A misdemeanor resisting law enforcement. By agreement of the parties, the trial court dismissed the voyeurism charges, but it denied Delagrange's motion to dismiss the attempted child exploitation charges. Delagrange successfully sought interlocutory appeal of that ruling, but the Court of Appeals affirmed the trial court and remanded the case. Delagrange v. State, 951 N.E.2d 593, 596 (Ind. Ct. App. 2011), trans. denied 962 N.E.2d 649 (Ind. 2011) (table).

After trial, the jury convicted Delagrange of the remaining five counts. He appealed, arguing the evidence was insufficient to support his convictions for attempted child exploitation. A divided panel of the Court of Appeals reasoned the child exploitation statute

> demands the child be performing the sexual conduct, which herein
> required the child be exhibiting her uncovered genitals with the

2

> intent to satisfy someone's sexual desires. Therefore, in order for Delagrange's attempt to commit child exploitation, each child must have been exhibiting her uncovered genitals with the intent to satisfy sexual desires.

Delagrange v. State, 981 N.E.2d 1227, 1232 (Ind. Ct. App. 2013). As the State had presented no evidence of that, the panel reversed Delagrange's four convictions for attempted child exploitation. Id.[1] Judge Najam dissented, in part because he believed the majority's interpretation "undermines the goal of the statute, which is to criminalize the exploitation of child victims." Id. at 1235 (Najam, J., dissenting).

We granted transfer. Delagrange v. State, 986 N.E.2d 819 (Ind. 2013) (table); Ind. Appellate Rule 58(A).

## Standard of Review

When considering whether the evidence is sufficient to support an appellant's conviction, we neither reassess witness credibility nor reweigh the evidence, as those tasks are reserved to the fact-finder. Lock v. State, 971 N.E.2d 71, 74 (Ind. 2012). Rather, we consider only the evidence most favorable to the conviction, and we will affirm unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Drane v. State, 867 N.E.2d 144, 146–47 (Ind. 2007) (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)).

---

[1] The panel below framed Delagrange's appeal as challenging the trial court's denial to his motion for a directed verdict. But Delagrange himself does not frame his appeal this way; indeed, he could not, because he waived his right to appeal that issue by presenting evidence after the trial court denied his motion. Jordan v. State, 691 N.E.2d 487, 489 (Ind. Ct. App. 1998). Rather, he argues the evidence was insufficient to support his conviction, and we address that argument—which means we cannot and do not consider, as the panel below did, the arguments regarding the statutory language that Delagrange's counsel made during his trial in support of the motion for directed verdict.

**The Evidence Was Sufficient to Support Delagrange's Convictions for Attempted Child Exploitation.**

Delagrange argues the evidence was insufficient to support his convictions for attempted child exploitation.[2] First, he argues "the State failed to prove all the factual elements enumerated in the child exploitation statute by direct evidence" because none of the images depicted "sexual conduct" as that term is used in the child exploitation statute. Appellant's Br. at 6. Second, he argues that in the absence of such depictions, "it was wholly unreasonable for the jury to infer that Mr. Delagrange had attempted to make such proscribed images" because his victims were fully clothed and it was wintertime. Appellant's Br. at 6.

Each of the attempted child exploitation charges stated, in pertinent part:

> On or about February 27, 2010 David Delagrange did attempt to commit the felony of Child Exploitation that is to knowingly or intentionally produce and/or create and/or film and/or videotape and/or a digitized image of a performance or incident that includes *sexual conduct* by a child under eighteen (18) years of age . . . by engaging in conduct that constituted a substantial step toward the commission of said offense that is; attach a camera to his shoe and recorded video of the area under the skirt or dress of the child.

App. at 64–66 (emphasis added). At the time of the charged acts, the relevant portion of the child exploitation statute provided: "'Sexual conduct' means . . . exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person." Ind. Code § 35-42-4-4(a) (2008). Delagrange argues that because the State presented no evidence that any of the images he captured depict uncovered genitals, it failed to prove an element of the charged offense.

---

[2] Delagrange does not appeal his conviction for resisting law enforcement.

4

We disagree. Had Delagrange been charged with child exploitation, his argument might have merit, but he was charged with *attempted* child exploitation. Under Indiana law, "a person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a) (2008).[3] Thus, the State need not show Delagrange actually succeeded in capturing images of uncovered genitals; rather, it must show that he took a "substantial step" toward doing so.

And whether Delagrange took such a "substantial step" is a question for the fact-finder, which brings us to Delagrange's second argument: that it was unreasonable for the jury to infer he intended to capture images of uncovered genitals, rather than—as he testified—pictures of "high heels, boots, pantyhose, panty shots, [and] nylons." Tr. at 203. In the context of child exploitation, as in other crimes, the intent element "may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." Bowles v. State, 737 N.E.2d 1150, 1152 (Ind. 2000).

On this point, we find Saxton v. State, 790 N.E.2d 98 (Ind. 2003) instructive. In Saxton, the defendant probationer was caught standing outside a woman's home and staring into her bathroom window at five o'clock in the morning. Id. at 98. He was arrested and charged with voyeurism, and the trial court revoked his probation. Id. He appealed, arguing that because the victim never testified, the State failed to prove he did not have her permission to be there. Id. We found sufficient circumstantial evidence of lack of permission:

> Put in terms of sufficiency of the evidence, the question becomes: can a trial court infer that someone caught standing on an air conditioner staring into a woman's bathroom at 5 a.m. who runs off rather forcefully when challenged was a person

---

[3] This statute was cosmetically amended in 2013, but the substance of this section remains unchanged. See Ind. Code § 35-41-5-1(a) (2013) (replacing "he" with "the person").

peeping without the permission of the target?  We say yes, and affirm the judgment of the trial court.

Id. at 99–100.

And just so here:  can a jury infer that someone taking "upskirt" photographs of women and girls by means of a concealed shoe camera does so in the hope that some of them will not be wearing undergarments?  We say yes.  Delagrange testified he intended "to get fetish photography, which is high heels, boots, pantyhose, panty shots, nylons," Tr. at 203, but the jurors were not required to credit that testimony.  After all, one victim testified she was not wearing leggings.  And on cross-examination, Delagrange's answers suggested his interest was not limited to his victim's clothing. When the prosecutor asked whether Delagrange intended to "videotape what was under their skirt [sic]," Delagrange admitted he did.  Tr. at 223.  When the prosecutor asked "what else" Delagrange had a fetish for, he answered:  "I love the female form."  Tr. at 224.  In light of that circumstantial evidence, the jury could reasonably infer that Delagrange intended to capture not just images of undergarments but also—or instead—images of uncovered genitals.

Finally, we note that Delagrange's trial counsel repeatedly drew a parallel between the images Delagrange captured with his ersatz equipment and a famous photograph of Marilyn Monroe standing over an air vent.  This analogy was unpersuasive for a lack of similarity between a photograph of a knowing and consenting adult and a video of an unknowing and unconsenting child.  The former is legal;[4] the latter is not.

---

[4] A near-identical photograph of an *unconsenting* adult was found to be a civil tort—invasion of privacy. See Daily Times Democrat v. Graham, 162 So.2d 474, 478 (Ala. 1964) ("To hold that one who is involuntarily and instantaneously enmeshed in an embarrassing pose forfeits her right of privacy merely because she happened at the moment to be part of a public scene would be illogical, wrong, and unjust."). But scholars have opined "civil law is an inadequate vehicle to redress the anti-social behavior manifest in video voyeurism" because it is so often clandestine; thus, "the majority of victims are never likely to

## Conclusion

We hereby affirm the trial court.

Dickson, C.J., Rucker, David, and Rush, JJ., concur.

---

realize that they, in fact, have been victimized . . . and consequently may never initiate a civil suit." Lance E. Rothenberg, <u>Re-Thinking Privacy: Peeping Toms, Video Voyeurs, and the Failure of Criminal Law to Recognize a Reasonable Expectation of Privacy in the Public Space</u>, 49 Am. U. L. Rev. 1127, 1149 (2000) (internal citations omitted).

Indeed, the Indiana General Assembly recently amended the voyeurism statute to criminalize non-consensual "upskirt" photography regardless of the victim's age: "A person who (1) without the consent of the individual; and (2) with intent to peep at the private area of an individual; peeps at the private area of an individual and records an image by means of a camera commits public voyeurism . . ." P.L. 75-2011, § 1, 2011 Ind. Acts 696, 696–98 (codified at Ind. Code § 35-45-4-5(d) (Supp. 2013)); <u>see also</u> <u>id.</u> (codified at Ind. Code § 35-45-4-5(a) (Supp. 2013) (defining "private area" as "the naked or undergarment clad genitals, pubic area, or buttocks of an individual.")).