Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**TIMOTHY J. O'CONNOR**
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BREANNE H. RICE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1401-CR-12 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-1304-FC-27930

**September 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Breanne Rice appeals her conviction for promoting prostitution, as a Class C felony, following a bench trial. Rice presents two issues for our review:

1. Whether the State presented sufficient evidence to support her conviction.

2. Whether her conviction is contrary to the legislature's intent to punish pimps more harshly than prostitutes.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

In April 2013, Rice contacted an escort agency via email regarding possible work as a prostitute. The recipient of Rice's email was not an actual escort agency, but an account set up by Indianapolis Metropolitan Police Department ("IMPD") Detective Joshua Shaughnessy. Detective Shaughnessy replied to Rice's inquiry using the name "Jenna,"[2] and the two exchanged telephone numbers. Rice and Jenna proceeded to communicate via text message. Jenna told Rice that she could procure prostitution clients for Rice and that Jenna would charge Rice fifty percent of the fees those clients paid to Rice.

During one text exchange, Jenna told Rice about a possible client with whom Rice could meet. Rice responded that she could use her own apartment for such meetings. Rice also stated to Jenna, "if u ever just have a slow day you can use my apartment so u

---

[1] We note, as we have in a prior memorandum decision, that the transcript in this case emits an unpleasant odor consistent with that of cigarette or pipe smoke that is apparent, offensive, and consistent. We kindly remind all those who handle the record on appeal to avoid such contamination.

[2] For ease of discussion, we will refer to Rice's communications and interactions with "Jenna," even though Rice was actually communicating with Detective Shaughnessy by email and text and with Detective Tabitha Mclemore over the telephone and in person.

don't have to pay that big money for a hotel and I'm a clean freak and the building stays locked or if u just need a place in greenwood in general u can[.]" State's Ex. 1 (errors in original). Sometime after that, IMPD Detective Tabitha Mclemore, posing as Jenna in a telephone call, asked Rice if she could use Rice's apartment to meet a client who wanted to pay Jenna $300 for sexual intercourse. Rice agreed.

On April 29, when Jenna (Detective Mclemore) arrived at Rice's apartment, Rice had set out lingerie for Jenna to wear for Jenna's client, and Rice told Jenna where additional lingerie was located in case she wanted to use it. Rice also helped Jenna give her client (Detective Shaughnessy) directions to Rice's apartment. When Detective Shaughnessy arrived, he and Detective Mclemore arrested Rice. After hearing her Miranda rights, Rice agreed to talk to the detectives. Rice admitted that she knew that "Jenna" intended to use her apartment for prostitution. Rice acknowledged that prostitution is illegal, but Rice believed that it was not illegal to provide a place for someone else to engage in prostitution.

The State charged Rice with promoting prostitution, as a Class C felony. Following a bench trial, the trial court found her guilty as charged. The trial court entered judgment and sentenced her to two years, which the court suspended to probation. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

Rice first contends that the State presented insufficient evidence to support her conviction. When considering whether the evidence is sufficient to support an

3

appellant's conviction, we neither reassess witness credibility nor reweigh the evidence, as those tasks are reserved to the fact-finder. Delagrange v. State, 5 N.E.3d 354, 356 (Ind. 2014). Rather, we consider only the evidence most favorable to the conviction, and we will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id.

To prove promoting prostitution, as a Class C felony, the State was required to show that Rice, having control over the use of an apartment, did knowingly permit Detectives Mclemore and Shaughnessy to use the apartment for prostitution. Ind. Code § 35-45-4-4. Rice's sole contention on appeal is that the State was required to prove that the detectives committed prostitution after Rice had provided them with access to her apartment. Rice directs us to Indiana Code Section 35-45-4-2, which defines prostitution as being committed when a person, for money or other property, knowingly or intentionally performs, or offers or agrees to perform, sexual intercourse or deviate sexual conduct; or fondles, or offers or agrees to fondle, the genitals of another person. Rice maintains that, because there is no evidence that the detectives committed prostitution as defined by statute, Rice cannot be convicted of promoting prostitution.

In support of her contention, Rice asserts that the circumstances here "are akin to the case of Huber v. State, 805 N.E.2d 887 (Ind. Ct. App. 2004)." Appellant's Br. at 6. In Huber, we reversed the defendant's conviction for invasion of privacy where he had unsuccessfully attempted to get a third party to convey a message to his wife, who had three protective orders against him. Huber, 805 N.E.2d at 889. We held that the evidence was insufficient to support the conviction because Huber's attempt to contact

4

his wife was incomplete.  Rice maintains that this court's analysis in <u>Huber</u> applies here and that her conviction should be reversed because the detectives did not engage in prostitution, but only pretended to do so.

Rice's contention on appeal is similar to that asserted by the defendant in <u>Gibson</u> <u>v. State</u>, 514 N.E.2d 318 (Ind. Ct. App. 1987), <u>trans. denied</u>.  In <u>Gibson</u>, an undercover police officer visited "a house of prostitution" run by Gibson and ostensibly "hired" a prostitute working for Gibson.  <u>Id.</u> at 319.  The police officer gave fifty dollars to the prostitute, who was cooperating with the police.  The prostitute then gave Gibson the fifty dollars, and police arrested Gibson for promoting prostitution under Indiana Code Section 35-45-4-4(4), which prohibits receiving money or other property from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution.

> On appeal, Gibson claimed
>
> that she could not be guilty under Ind. Code Sec. 35-45-4-4(4) because an act of prostitution did not occur between [the prostitute working for her] and the police decoy[.]  Gibson's claim is based on the proposition that she could not have received money knowing it was "earned" from prostitution when there was no prostitution.  Thus Gibson concludes there was insufficient evidence to support the jury's verdict on Count IV.

<u>Id.</u> at 324.  We rejected Gibson's argument and held as follows:

> The word "earned" must be read in the context of the phrase "knowing it was earned in whole or in part from prostitution. . . ."  Thus Gibson's claim is actually that in order for a person to know of an event, the event must have occurred.
>
> Gibson's claim is philosophically astute, but legally incorrect.  A philosophically adequate definition of "knowledge" may indeed exclude the possibility of a person knowing of an event that never occurred.  But this lends no support to Gibson's conclusion that she could not be guilty because the relevant sense of "know," in the context of the statute is "a mental state and the trier of fact may examine the circumstances to

5

reasonably infer its existence." Whorton v. State, 412 N.E.2d 1219, 1223 (Ind. Ct. App. 1980). Thus, for purposes of promoting prostitution, knowing is a state of mind which can occur even when what is "known" did not occur. In other words whether [the prostitute employed by Gibson] committed an act of prostitution with [the undercover police officer] is irrelevant to Gibson's conviction on Count IV because the evidence reasonably supports the fact finder's determination Gibson believed an act of prostitution had occurred. Her state of mind, therefore, was one of knowledge.

Id. (emphasis added).

Likewise, here, the State presented the detectives' testimony that Rice had agreed to let them use her apartment knowing that "Jenna" intended to be paid to engage in sexual intercourse with her client. That the detectives did not have an actual agreement to engage in sex for money has no bearing on Rice's "knowledge" that prostitution would occur in her apartment for purposes of the promoting prostitution statute. See id. The State presented sufficient evidence to support Rice's conviction.

**Issue Two: Legislative Intent**

Rice next contends that her conviction is invalid because it violates the legislature's intent to punish pimps more harshly than prostitutes. Rice maintains that she is merely a prostitute and should not have been charged or convicted for promoting prostitution. In support of this contention, Rice cites our supreme court's opinion in State v. Hartman, 602 N.E.2d 1011, 1012 (Ind. 1992). In Hartman,

[t]he State charged Hartman under subsection (5) of the statute on promoting prostitution. The information alleged that Hartman "did knowingly and unlawfully conduct or direct Richard Truog to a place . . . for the purpose of prostitution." In granting Hartman's motion to dismiss, the trial court held that the promoting statute was intended to reach the conduct of a third party, and not the immediate parties to the act of prostitution. The Court of Appeals reversed, declaring that the plain meaning of "directing another person to a place for prostitution"

6

encompassed Hartman's alleged act of calling Truog and giving him directions to his house.

Id. at 1013. Our supreme court agreed with the trial court that Hartman's charge should be dismissed and observed that "it seems that the legislature has rationally concluded that the business manager of a prostitution enterprise typically imposes a greater harm on society than the sole practitioner." Id.

Here, Rice suggests that, based upon the legislative intent as declared by our supreme court in Hartman, we read into the promoting prostitution statute a requirement that only a "business manager" can be convicted under the statute. And Rice contends that there is no evidence that she was a "business manager." Rice maintains that the evidence shows the opposite, namely, that she was attempting to work as a prostitute for "Jenna," who was the real business manager.

But Rice ignores the plain language of the statute and the fact that she was not the prostitute in the Jenna-client relationship. Indiana Code Section 35-45-4-4(3) requires only that "a person" have control over the use of a place and knowingly or intentionally permits another person to use the place for prostitution. The State presented ample evidence that, in addition to expressing an interest in working as a prostitute for "Jenna," Rice had control over her apartment and knowingly and intentionally permitted the detectives to use it for prostitution.

Indeed, in Hartman, our supreme court rejected an argument similar to that advanced by Rice here. The court examined this court's opinion in Benjamin v. State, 508 N.E.2d 1360 (Ind. Ct. App. 1987), where we affirmed the defendant's conviction for

promoting prostitution. In <u>Benjamin</u>, we explained the defendant's "sole argument on

appeal" as follows:

> [Benjamin contends that] the statute under which she was convicted, I.C. [§] 35-45-4-4, was designed to criminalize activities of third persons promoting prostitution, not that of the prostitute or the patron. Based upon this assumed legislative intent, Benjamin argues that "profiteering" by a non-participating third person must be shown so that promotion is distinguished from simple prostitution. She contends that the evidence did not show that she was "an intended target of the statute." Appellant's Brief at 8.

<u>Id.</u> at 1361. In affirming the defendant's conviction, we explained:

> However, the [Criminal Law Study] Commission Comments with respect to subsection (3), the subsection under which Benjamin was convicted, state:
>
>> "The proposed clause does not attempt to specify different kinds of places, but employs the term 'any place,' connoting thereby any and every kind of place, be it a house, or apartment, or motel, hotel, rooming house, lodging house, or even a bus. . . . This covers the conduct of keeping a place of prostitution, as well as allowing a place to be used for the purpose of prostitution. . . . This fixes the liability on <u>any person who exercises the control over the place</u>, regardless of the source of his power. He may be an owner, or the manager, or <u>anybody, as long as he has the control over the place</u>."
>
> [Indiana Penal Code, Proposed Final Draft, p. 129 (Criminal Law Study Commission 1974)] (emphasis supplied).
>
> Thus, in drafting subsection (3), the Commission did not seek to impose the requirements of a third-party promoter, plus profit resulting from the prostitution. Rather, a broader scope was intended, one which would encompass all activities which promote prostitution via having control over, and permitting use of, the place where prostitution occurs.
>
> The language of subsection (3) itself supports this conclusion. The key elements under subsection (3) are control of a place, and knowing or intentional consent in its use for prostitution. The subsection does not exclude non-profitable grants of permission, nor does it exclude permission

8

granted by one also engaged in prostitution. Nothing in the statute, either by express statement or implication, supports the construction Benjamin posits.

Id.

And in Hartman, our supreme court observed that the defendant in Benjamin "made much the same argument" as the defendant in Hartman, and the court stated:

> To the extent that Benjamin was convicted of permitting another person, i.e., her fellow prostitute, to use her home for prostitution, the holding in Benjamin is correct. To the extent the court's dicta in Benjamin suggests that a lone prostitute could be charged with a class C felony under such circumstances, however, it is error. . . .

602 N.E.2d at 1014 (emphasis added). Here, because the evidence shows that Rice permitted the detectives to use her apartment for prostitution, her conviction for promoting prostitution is consistent with the legislature's intent with respect to Indiana Code Section 35-45-4-4(3).

Affirmed.

BAILEY, J., and PYLE, J., concur.