# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2018, 10:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jack Quirk
Quirk & Hunter PC
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Armando P. Castillo, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 31, 2018 <br><br> Court of Appeals Case No. 18A-CR-1571 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Kimberly S. Dowling, Judge <br><br> Trial Court Cause No. 18C02-1702-F4-6 |

**Kirsch, Judge.**

[1] Armando P. Castillo ("Castillo") was convicted after a bench trial of sexual misconduct with a minor[1] as a Level 4 felony and sentenced to eight years executed in the Department of Correction. He appeals his conviction and raises the following restated issues for our review:

> I. Whether the trial court abused its discretion when it admitted testimony regarding Castillo's answers during his interview with police; and

> II. Whether the State presented sufficient evidence to support Castillo's conviction.

[2] We affirm.

## Facts and Procedural History

[3] In the summer of 2015, J.C. was fifteen years old and lived in a three-bedroom home with her family, which included her five siblings, her mother, and her stepfather, Castillo. *Tr. Vol. II* at 37-39, 43. J.C.'s mother and Castillo were in one bedroom, her adult brother was in another, and J.C. shared a bedroom with her sisters. *Id.* at 39. Her brother was in college at the time, and her mother was employed and worked mornings on the weekends and afternoons on the weekdays, after picking up the children from school. *Id.* at 40, 70. In the summer of 2015, Castillo began sexually abusing J.C. *Id.* at 43.

---

[1] *See* Ind. Code § 35-42-4-9(a)(1).

[4] The sexual abuse occurred in the family's house, typically on Tuesdays and Thursdays. *Id*. at 43-44. On Tuesdays and Thursdays, J.C.'s sisters would be at dance lessons, her mom would be working, and her brother would be visiting his biological father, so J.C. and Castillo would be home alone. *Id*. at 44. Castillo would either call or text J.C. to come to his bedroom and ask her to bring him coffee or food. *Id*. at 45. When J.C. entered the room, Castillo would lock the bedroom door and tell her to remove all of her clothes. *Id*. at 46. If J.C. refused, Castillo would remove them himself while holding her hands down. *Id*. at 47, 51. Once J.C. was naked, Castillo would touch her bare breasts and vagina with his hands. *Id*. at 47. Castillo would then insert his penis into J.C.'s vagina. *Id*. at 48. He would continue the sexual intercourse until he would tell her, "I'm coming. Hold on. I'm coming." *Id*. at 48. Castillo would ejaculate inside of her, except for the one or two occasions that he used a condom and would then "pull out." *Id*. at 48-49. If J.C. attempted to resist the sexual intercourse, Castillo would "get mad" and would be more aggressive and "go harder" when having sex with her. *Id*. at 52-52.

[5] Although these sexual acts usually occurred when no one else was in the house, occasionally her siblings or mother would be at home. *Id*. at 52. If her mother was home, Castillo would not have intercourse with J.C., but would only touch her breasts and vagina. *Id*. Occasionally, one of J.C.'s sisters would be home during these sexual acts and would knock on Castillo's locked bedroom door. *Id*. at 53. When this happened, Castillo would cover J.C.'s mouth and tell whoever was knocking to wait because he was "trying to talk to your sister."

*Id.* at 53, 82. One of J.C.'s sisters later recalled hearing J.C. screaming in Castillo's room, but the sister ignored it because she thought that J.C. had fallen "or something." *Id.* at 81-82.

[6] This sexual abuse continued from the summer of 2015 until January 2017. J.C. did not disclose the abuse earlier because she was scared. *Id.* at 53-54. To keep J.C. from disclosing, Castillo would tell her that if they "didn't have him [they] would have no money . . .[and] would be on the streets" because J.C.'s mother "wasn't making enough for us to not have another income." *Id.* at 54. Therefore, J.C. worried that her sisters "would go hungry." *Id.* She finally told a friend about the sexual abuse while communicating through a messaging app that J.C. used on a family member's iPad. *Id.* at 61-62. The family member found the conversation and brought it to the attention of J.C.'s mother. *Id.* On January 26, 2017, J.C.'s mother then took J.C. to the hospital for an examination and testing for sexually transmitted diseases. *Id.* at 42.

[7] J.C.'s mother confronted Castillo about molesting J.C., and he responded that "he couldn't believe that I was believing [J.C.] and . . . making him leave." *Id.* at 112-13. He then stated, "I might as well run." *Id.* at 113. In the five days between Castillo's abuse of J.C. being discovered and Castillo's arrest, he made twenty-six Internet searches about bus and plane fares. *Id.* at 139, 143. During the investigation of Castillo, Muncie Police Department Officer Kristofer Swanson ("Officer Swanson") interviewed Castillo. Officer Swanson was a member of the Sexual Molest and Abuse Response Team within the Muncie Police Department and had investigated several hundred sexual abuse cases.

*Id*. at 126-27, 149.  When asked about the allegations that he had molested J.C., Castillo denied any sexual contact with J.C.  *Id*. at 146-47.

[8] On February 7, 2017, the State charged Castillo with Level 4 felony sexual misconduct with a minor.  Castillo waived his right to a jury trial, and a bench trial was held.  At trial, a video of Officer Swanson's interview with Castillo was admitted into evidence and played for the trial court.  Officer Swanson testified and was asked how he would characterize Castillo's answers to his questions in the interview.  *Id*. at 136.  Castillo objected to the question as irrelevant and as invading the province of the trier of fact, but his objection was overruled.  *Id*. at 136-37.  Officer Swanson responded to the question, "I felt like he was avoiding answering the questions I was talking about and being evasive."  *Id*. at 137.  At the conclusion of the trial, Castillo was found guilty of Level 4 felony sexual misconduct with a minor, and the trial court sentenced him to eight years executed.  Castillo now appeals.

## Discussion and Decision

## I.    Admission of Testimony

[9] "Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court."  *Harrison v. State*, 32 N.E.3d 240, 250 (Ind. Ct. App. 2015), *trans. denied*.  Accordingly, we review the trial court's decision on appeal only for an abuse of that discretion.  *Id*.  The trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it or if the

court has misinterpreted the law. *Id.* We do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling, but we also consider any undisputed evidence that is favorable to the defendant. *Id.* Further, even if the admission of evidence is erroneous, the error is harmless unless it affects the substantial rights of the defendant. *Cannon v. State*, 99 N.E.3d 274, 278 (Ind. Ct. App. 2018), *trans. denied*.

[10] Castillo argues that the trial court abused its discretion when it allowed Officer Swanson to testify that he thought Castillo's answers during his interview were evasive. Castillo contends that Officer Swanson's testimony was not rationally "based on witness perception" and "was not offered to help clear any understanding of the witness testimony or determine a fact in issue." *Appellant's Br.* at 11. Therefore, Castillo asserts that Officer Swanson's testimony invaded the province of the trier of fact, and it was an abuse of discretion to admit the statement at trial.

[11] Under Indiana Evidence Rule 701, any witness not testifying as an expert, may testify "in the form of an opinion" if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or determination of a fact in issue." "The requirement that the opinion be 'rationally based' on perception simply means that the opinion must be one that a reasonable person could normally form from the perceived facts," which are facts received "directly through any of the [witness's own] senses." *Satterfield v. State*, 33 N.E.3d 344, 352 (Ind. 2015) (citations omitted). The witness's opinion is "helpful" "if the testimony gives substance to facts, which

were difficult to articulate." *Id*. (quoting *McCutchan v. Blanck,* 846 N.E.2d 256, 262 (Ind. Ct. App. 2006)).

[12] Here, during his investigation, Officer Swanson conducted an interview of Castillo and was able to evaluate and personally observe Castillo's answers to the questions and his demeanor during the interview. *Tr. Vol. II* at 133-38. Thus, Officer Swanson's opinion was based on his personal perceptions gained directly through his own senses while questioning Castillo. Additionally, Officer Swanson's testimony regarding Castillo's answers to the interview questions was helpful to the trial court because it explained why Officer Swanson raised his voice toward the end of the interview. Specifically, the State asked Officer Swanson, "I think in the video we saw a, towards the end your voice raise. How would you characterize the answers that the Defendant was giving you?" *Id*. at 136. Based on this question, it was clear that the State was attempting to establish why Officer Swanson may have appeared frustrated with Castillo during the interview. Therefore, the testimony was helpful to a clear understanding of Officer Swanson's testimony and his behavior while interviewing Castillo. We conclude that the trial court did not abuse its discretion when it admitted Officer Swanson's testimony pursuant to Indiana Evidence Rule 701.

[13] Even if the trial court erred in admitting Officer Swanson's testimony, the error was harmless. J.C. testified extensively regarding the sexual abuse she endured from Castillo and how he would force her to have sexual intercourse. Castillo has not shown how this sole characterization by Officer Swanson of Castillo's

interview answers as being evasive prejudiced his substantial rights and requires reversal. We, therefore, conclude that the trial court did not abuse its discretion when it admitted Officer Swanson's testimony, and even if it was error to do so, it was harmless.

## II.  Sufficient Evidence

[14]  The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State,* 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied.* We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State,* 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied.* We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* We will not disturb the verdict if there is substantial evidence of probative value to support it. *Fuentes,* 10 N.E.3d at 75. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Delagrange v. State*, 5 N.E.3d 354, 356 (Ind. 2014). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim. *Dalton v. State*, 56 N.E.3d 644, 648 (Ind. Ct. App. 2016), *trans. denied*.

[15]  Castillo argues that the State failed to present sufficient evidence to support his conviction for Level 4 felony sexual misconduct with a minor. He asserts that

there was no physical evidence presented "that any type of sexual penetration or misconduct of any kind took place." *Appellant's Br*. at 10. Castillo further alleges that, "[t]he State made no effort to obtain medical evidence to support its claim of sexual misconduct with a minor." *Id*. He also contends that no witnesses testified that they observed any behavior that amounted to sexual intercourse or sexual misconduct. Based on this, Castillo maintains that the State failed to meet its burden and that insufficient evidence was presented to support his conviction.

[16] In order to support Castillo's conviction for Level 4 felony sexual misconduct with a minor, the State was required to prove beyond a reasonable doubt that Castillo was "a person at least twenty-one . . . years of age" who "perform[ed] or submit[ted] to sexual intercourse or other sexual conduct" with a "child at least fourteen . . . years of age but less than sixteen . . . years of age." Ind. Code § 35-42-4-9(a)(1).

[17] Here, the evidence most favorable to the verdict showed that J.C. testified that she was fifteen years old at the time when Castillo first forced her to have sexual intercourse, and it is undisputed that Castillo was older than twenty-one years old during the relevant time period. *Tr. Vol. II* at 35, 43; *Appellant's Public App. Vol. 2* at 18. At trial, J.C. testified that Castillo, on multiple occasions, would force her to have sexual intercourse. She testified that he would call her to his room, lock the door, demand that she remove her clothes, and then insert his penis into her vagina until he ejaculated. *Tr. Vol. II* at 45-49. In her testimony, she recalled that Castillo forced her to have sexual intercourse numerous times,

but that he only used a condom once or twice. *Id.* at 48-50. J.C. recounted that if she resisted the sexual encounters, Castillo would force her to submit to sexual intercourse and would be more aggressive and "go harder" when having sex with her. *Id.* at 52-52. J.C.'s testimony established that Castillo engaged in sexual intercourse with her against her will when she was between the ages of fourteen and sixteen, and he was over the age of twenty-one. A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim. *Dalton*, 56 N.E.3d at 648. We, therefore, conclude that the State presented sufficient evidence to support Castillo's conviction for sexual misconduct with a minor as a Level 4 felony.

[18] Affirmed.

Vaidik, C.J., and Riley, J., concur.