# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Feb 13 2019, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'CONNOR & AUERSCH
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Zion Smith,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 13, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1405<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>Trial Court Cause No.<br>49G06-1608-MR-31797 |

**Bailey, Judge.**

# Case Summary

During the evening of July 18, 2016 and the early morning of July 19, 2016, sixteen-year-old Zion Smith ("Smith") and his girlfriend, Jaquisha Love ("Love") engaged in a crime spree, killing Dayron Staten ("Staten"), robbing and shooting at Anya West ("West"), shooting and paralyzing Valencia Standberry ("Standberry"), and shooting and wounding Mark May ("May"), Antonio Turner ("Turner"), and Antonio Trotter ("Trotter"). Smith appeals his convictions of one count of Murder, a felony,[1] and five counts of Attempted Murder, Level 1 felonies.[2] He also challenges his aggregate 145-year sentence. We affirm.

# Issues

Smith presents the following issues for review:

  I.    Whether the State presented sufficient evidence of his identity as the person who murdered Staten and attempted to murder Standberry, Turner, Trotter, and May;

  II.   Whether the State presented sufficient evidence of his specific intent to kill West; and

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. §§ 35-41-5-1, 35-42-1-1. He does not challenge his conviction for Robbery, as a Level 5 felony, I.C. § 35-42-5-1.

III. Whether his sentence is inappropriate.

# Facts and Procedural History

On July 18, 2016, Love asked her friend, West, to hang out with Love and Smith in a park on the east side of Indianapolis. Love specified that West was to bring her gun, and West complied. As the trio walked along, Smith stated that he had a .45 caliber handgun for sale, and he and West exchanged weapons. After West examined the .45 handgun, she handed it back to Smith. However, Smith announced that West's gun was "his gun now" and he pointed the .45 at West's head, threatening to "splat her s---." (Tr. Vol. II at 244.) Smith directed Love to search West's pockets. After the search, West pushed Love away and began to run. West heard three or four shots in her direction, one of which pierced her shirt and jacket. Later that evening, West hid on a neighbors' porch and observed Love and Smith walking together; each had a handgun.

After acquiring West's handgun, Smith and Love called Staten, who had a nine-millimeter handgun for sale, to discuss a trade. Staten arrived at a designated meeting place, but Smith and Love did not show up. Love then called to direct Staten to go to Olney Street. Again, Staten arrived at the meeting place, but Smith and Love did not. Staten went back home, receiving final calls from Love at 11:55 p.m. and 12:00 a.m. Shortly thereafter, Staten said that he was going "around the corner to go do a tradeoff," (Tr. Vol. III at 244), and he left with Standberry in Standberry's vehicle.

[5] At 12:08 a.m., Indianapolis 9-1-1 operators received a report of shots fired at the intersection of Robson and LaSalle Streets. Police arrived to find a vehicle in the street with its lights on and a rear door open. Staten was slumped behind the steering wheel, deceased. He had been shot three times. Standberry, in the front passenger seat, had also been shot multiple times. One bullet had pierced her spine and left her paralyzed.

[6] At 3:35 a.m., Indianapolis 9-1-1 operators received a report of shots fired on Wallace Avenue. A shooting had occurred at a residence where May lived with his girlfriend, Pamela Coomer ("Coomer"). May had been socializing with his friend, Trotter, and Trotter's son, Turner, when someone knocked at the door. Either Coomer or Trotter answered the door and Trotter recognized Love "from the neighborhood." (Tr. Vol. IV at 64.) She was accompanied by a young man. Trotter summoned Turner to the door; when Turner responded, he was immediately shot four times. He ran from the room, leaving behind his pants and approximately $3,000.00.

[7] May ran to a bedroom and barricaded himself in with Coomer. After May located a revolver, he left the bedroom armed. When May stepped into his kitchen, the young man jumped from behind the stove and shot May twice. May, his pelvis shattered, fell into the hallway. He observed the young man shoot Trotter in the chest. As May saw the intruder's gun pointed at Trotter's head, May shot at the intruder. The intruder was wounded, reacting as if "the ghost come out of his eye like he was surprised" and his "gun went flying out of his hand." (Tr. Vol. IV, pgs. 44-45.) He fled, leaving behind the handgun.

Officers found a second handgun on the kitchen floor, a .45 caliber. Smith's fingerprints were found on the slide of that handgun.

[8] Smith and Love returned to the home of a friend, where they had been staying, a mile away from Wallace Street. At 4:16 a.m., Indianapolis police officers were dispatched to the friend's residence and found Smith suffering from a gunshot wound to his eye. The officers also recovered live ammunition, unfired cartridges, and an ammunition box with a tray. Smith's fingerprints were on the ammunition tray.

[9] Smith was charged with multiple offenses, tried jointly with Love before a jury, and convicted as charged.[3] Smith received an aggregate sentence of 145 years: fifty-five years for Staten's murder, consecutive to a thirty-year sentence for the attempted murder of Standberry, consecutive to concurrent sentences of thirty years for the attempted murders of May, Turner, and Trotter, consecutive to a sentence of thirty years for the attempted murder of West, and concurrent to a three-year sentence for West's robbery. Smith now appeals.

---

[3] Apparently due to Double Jeopardy concerns, the trial court did not enter a judgment of conviction upon Smith's misdemeanor count of Carrying a Handgun without a License, and reduced the Robbery conviction to a Level 5 felony.

# Discussion and Decision

## Sufficiency of the Evidence – Offenses against Staten, Standberry, Turner, Trotter, and May

[10] To convict Smith of murder, as charged, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally killed Staten. I.C. § 35-42-1-1. To convict Smith of the attempted murders of Standberry, Turner, Trotter, and May, as charged, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally attempted to kill the named victim, by engaging in conduct with the specific intent to kill, that constituted a substantial step toward the commission of murder. I.C. §§ 35-42-1-1, 35-41-5-1. Smith challenges only the element of identity.[4]

[11] When considering the sufficiency of the evidence to support an appellant's conviction, we neither reassess witness credibility, nor reweigh the evidence, as those tasks are reserved to the fact-finder. *Delagrange v. State*, 5 N.E.3d 354, 356 (Ind. 2014). We consider the evidence most favorable to the conviction and affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[12] Unlike the offenses against West, there was no eyewitness testimony that Smith perpetrated the crimes against Staten, Standberry, Turner, Trotter, and May.

---

[4] As to the offenses against West, she testified that Smith was the perpetrator.

However, "[i]t is well established that circumstantial evidence alone may be sufficient to sustain a conviction." *Harbert v. State*, 51 N.E.3d 267, 275 (Ind. Ct. App. 2016). Determining identity is a question of fact. *Id.* (citing *Whitt v. State*, 499 N.E.2d 748, 750 (Ind. 1986)). Accordingly, when the evidence of identity is not entirely conclusive, the weight to be given to the identification evidence is within the province of the jury. *Id.*

[13] Here, the State presented evidence that Smith and Love were together when they robbed West and, later in the evening, West observed the pair walking together and displaying handguns. Love's phone records indicated that she had contacted Staten multiple times that evening, and that she called Staten immediately before he was found shot to death (apparently with his own gun). He had stated upon leaving home that he was going to trade a gun. Staten's friend Jevon Butler understood that Staten had arranged to meet Love and Smith.

[14] Trotter recognized Love as the person who came to his door; she was accompanied by a young man. About forty minutes after shots were reported at the Wallace Street residence, Love and Smith returned together to the home where they had been staying. From the foregoing evidence, the jury could infer that Smith remained with Love throughout the crime spree.

[15] Also, physical evidence implicated Smith. His fingerprint was recovered from a .45 caliber handgun left at the Wallace Street residence. Shell casings were recovered at the site of the attack on West, and it was determined that the .45

handgun abandoned at Wallace Street was the same gun used to shoot at West. Smith's palm print was found on the rear passenger door of Standberry's vehicle. Bullet fragments recovered from Staten's body were shot from the same nine-millimeter gun later found at Wallace Avenue. Finally, May shot the male intruder at Trotter's home and shortly thereafter, Smith showed up at his temporary residence with a gunshot wound to his eye. Smith's suggestions that someone else may have been with Love during the Robson Street and Wallace Street attacks is simply an invitation to reweigh the evidence, which we reject. *Delagrange*, 5 N.E.3d at 356. The State presented sufficient evidence to permit the jury to conclude beyond a reasonable doubt that Smith was the person who committed the charged crimes against Staten, Standberry, Turner, Trotter, and May.

## Sufficiency of the Evidence – Intent to kill West

[16] To convict Smith of the attempted murder of West, the State was required to prove beyond a reasonable doubt that Smith, acting with the specific intent to commit murder, engaged in conduct that constituted a substantial step toward the commission of the crime. *Davis v. State*, 558 N.E.2d 811, 812 (Ind. 1990). Smith does not deny that he committed an overt act of shooting toward West. Rather, he claims that the State failed to prove beyond a reasonable doubt that he intended to kill West because he would have succeeded in his goal if he had sincerely intended to kill her.

[17] The requisite intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Id.* "Discharging a weapon in the direction of a victim is substantial evidence from which a jury can infer intent to kill." *Reese v. State*, 939 N.E.2d 695, 702 (Ind. Ct. App. 2011) (citing *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988)), *trans. denied*. Smith fired a shot near West's foot and threatened to shoot her in the head. After West began running, Smith discharged three or four more shots in her direction. One shot pierced West's outer clothing. There is sufficient evidence from which the jury could infer Smith intended to kill West.

## Inappropriate Sentence

[18] Smith asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Pointing to his youthfulness and immaturity of brain development, Smith requests a revision of his aggregate sentence to seventy years.

[19] When a defendant requests review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we may consider all aspects of penal consequences imposed by the trial court, including whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). A defendant bears the burden of persuading this Court that his sentence

meets the inappropriateness standard. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (2007).

[20] The sentencing range for murder is forty-five to sixty-five years, with an advisory sentence of fifty-five years. I.C. § 35-50-2-3. Smith received an advisory sentence for Staten's murder. The sentencing range for a Level 1 felony is twenty to forty years, with an advisory sentence of thirty years. I.C. § 35-50-2-4. Smith received advisory sentences for each of the attempted murders of West, Standberry, Trotter, Turner, and May. The sentencing range for a Level 5 felony is one to six years, with an advisory sentence of three years. I.C. § 35-50-2-6. Smith received an advisory sentence for robbing West. Because some of the terms were to be served consecutively, Smith's aggregate sentence is 145 years.

[21] In imposing the sentence, the trial court considered Smith's youth to be a significant mitigator but observed that he also had a significant history of delinquency.[5] The trial court found the violence to multiple individuals and the fact that Standberry remained in a wheelchair because of Smith's actions to be aggravating circumstances. In determining that some of the individual sentences should be served consecutively, the trial court found support in "the nature of the crime spree, the extreme violence, the opportunity for each

---

[5] Smith had been arrested 13 times. He had been adjudicated delinquent for having committed three acts that would be misdemeanors and four acts that would be felonies, if committed by an adult. He had also violated probation.

defendant to stop their behavior, and yet [they] continue[d] on with violence in the community." (Tr. Vol. VII, pg. 4.)

[22] As to the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer*, 868 N.E.2d at 494. In determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011). Here, in each instance, the trial court imposed the presumptive sentence. Smith's challenge does not involve a deviation and he does not argue that the circumstances of any of his offenses would militate toward a less-than-advisory sentence. Instead, his challenge appears to be directed to the order that some individual sentences be served consecutively to one another. Smith is to serve fifty-five years for murdering Staten, consecutive to thirty years for attempting to murder Standberry, consecutive to thirty years for attempting to murder West, and consecutive to the three concurrent thirty-year sentences for the attempted murders of May, Turner, and Trotter.

[23] "It is a well established principle that the fact of multiple crimes or victims constitutes a valid aggravating circumstance that a trial court may consider in imposing consecutive or enhanced sentences." *O'Connell v. State*, 742 N.E.2d 943, 952 (Ind. 2001). Smith inflicted horrific injuries on multiple victims at three separate crime scenes. Staten died; four of the five surviving victims

suffered serious physical injuries. Standberry was permanently paralyzed from the waist down and has limited movement. May suffered a shattered pelvis and was required to walk with a cane thereafter. Trotter was shot in the chest and required hospitalization. Turner, who was shot four times, had serious blood loss and required hospitalization. The imposition of consecutive sentences was supported by valid aggravators.

[24] Yet a sentence that does not constitute an abuse of discretion may be reviewed under Appellate Rule 7(B). Smith directs our attention to *Brown v. State*, 10 N.E.3d 1 (Ind. 2014). There, our Indiana Supreme Court reviewed an aggregate 150-year sentence imposed upon Martez Brown for two murders and one robbery committed when he was sixteen years old. Brown had received a maximum term of sixty-five years for each murder and a maximum term of twenty years for the robbery, all to be served consecutively. *See id.* at 3. The Court acknowledged the "general recognition that juveniles are less culpable than adults and therefore are less deserving of the most severe punishments" and observed "this Court has not been hesitant to reduce maximum sentences for juveniles convicted of murder." *Id.* at 7. The Court reduced Brown's aggregate sentence to eighty years.

[25] Brown, unlike Smith, was convicted under an accomplice theory and was not the actual shooter. And, unlike Smith, he had received the maximum possible sentence despite having provided police with vital evidence. In light of the number and severity of Smith's crimes and his significant juvenile history reflecting poorly on his character, we are not persuaded by Smith's suggestion

that he should be accorded the same leniency as Brown. Smith's sentence is not inappropriate.

# Conclusion

[26] The State presented sufficient evidence to support each of Smith's challenged convictions. His aggregate 145-year sentence is not inappropriate.

[27] Affirmed.


Bradford, J., and Brown, J., concur.