## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 15 2020, 6:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Levi Bellamy,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 15, 2020<br><br>Court of Appeals Case No.<br>19A-CR-1540<br><br>Appeal from the<br>Jackson Circuit Court<br><br>The Honorable<br>Richard W. Poynter. Judge<br><br>Trial Court Cause No.<br>36C01-1703-F1-1 |

**Kirsch, Judge.**

[1] Following a jury trial, Jason Levi Bellamy ("Bellamy") was found guilty of two counts of child molesting[1] as Level 1 felonies and sexual misconduct with a minor[2] as a Level 4 felony. He was sentenced to thirty-five years for each of the Level 1 felonies and ten years for the Level 4 felony, with the sentences ordered to run consecutively for an aggregate sentence of eighty years executed. Contending that the evidence was insufficient to support his convictions and that his sentence is inappropriate, Bellamy now appeals.

[2] We affirm.

## Facts and Procedural History

[3] In April of 2016, thirteen-year-old D.F. began living with her great-aunt because her mother was being held in the Jackson County Jail. D.F. visited her mother at the jail on numerous occasions. On one of these occasions, she met Bellamy who was her mother's boyfriend. Bellamy was in his mid-thirties at the time.

[4] In May of 2016, Bellamy moved into D.F.'s great-aunt's home, and D.F.'s great-aunt allowed Bellamy to stay with her for several months. He soon developed a sexual relationship with D.F. and had sex with her on an almost

---

[1] *See* Ind. Code § 35-42-4-3(a)(1).

[2] *See* Ind. Code § 35-42-4-9(a)(1).

daily basis in May and June of 2016. They continued to engage in sexual intercourse after D.F's fourteenth birthday in June of 2016.

[5] D.F.'s grandfather worked at Jackson County Dispatch, which was located in the jail, and he frequently saw D.F. and Bellamy visiting D.F.'s mother. He was uncomfortable with the way in which Bellamy and D.F. sat next to each other in Bellamy's truck and held hands when walking through the parking lot. D.F.'s great-aunt was also uncomfortable with the amount of time that D.F. and Bellamy spent together and how closely they would sit together on the couch. She confronted Bellamy about her concerns and told Bellamy that he was going to be D.F.'s step-father and that he should act differently toward her.

[6] In June of 2016, D.F.'s great-aunt was arrested and jailed for operating a motor vehicle while intoxicated. D.F. was placed in foster care where she remained for approximately a year. She tried to stay in contact with Bellamy while she was in foster care, but the rules of the facility made that difficult. In September of 2016, D.F. and Bellamy began communicating via Facebook, but when D.F. later attempted to contact Bellamy by phone and learned that he was out with two women from his work, she became upset.

[7] In November of 2016, D.F. attended a seminar at her school about inappropriate sexual contact. After the seminar, she spoke with a school counselor and reported what had happened with Bellamy. She later went to a forensic interview at a child advocacy center. Police were notified and

interviewed Bellamy about D.F.'s allegations. Bellamy denied the allegations and stated that he did not engage in any inappropriate conduct with D.F.

[8] On March 21, 2017, the State of Indiana charged Bellamy with three counts of child molesting as Level 1 felonies and one count of sexual misconduct with a minor as a Level 4 felony. While Bellamy was incarcerated prior to his trial, he was incarcerated with a man named Rocky Drake ("Drake"). The police interviewed Drake, and he told them that Bellamy admitted to having sex with D.F. when she was thirteen and described it as the "best sex he has ever had." *Tr. Vol. II* at 129.

[9] A jury trial was held, and Bellamy was found guilty of two counts of child molesting as Level 1 felonies and one count of sexual misconduct with a minor as a Level 4 felony. The trial court sentenced Bellamy to thirty-five years for each of the Level 1 felonies and ten years for the Level 4 felony and ordered the counts to run consecutively for an aggregate sentence of eighty years executed. Bellamy now appeals.

## Discussion and Decision

## I. Sufficiency of the Evidence

[10] When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Lehman v. State,* 55 N.E.3d 863, 868 (Ind. Ct. App. 2016), *trans. denied.* We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from that evidence. *Fuentes v. State,* 10 N.E.3d 68, 75 (Ind. Ct. App.

2014), *trans. denied.* We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* We will not disturb the verdict if there is substantial evidence of probative value to support it. *Fuentes,* 10 N.E.3d at 75. We will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Delagrange v. State*, 5 N.E.3d 354, 356 (Ind. 2014). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim. *Dalton v. State*, 56 N.E.3d 644, 648 (Ind. Ct. App. 2016), *trans. denied*.

[11] Bellamy argues that the State presented insufficient evidence to support his convictions. He specifically contends that his conviction was based on the inherently incredible and dubious testimony of D.F. "The incredible dubiosity rule provides that a court may impinge on the jury's responsibility to judge witness credibility only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Carter v. State*, 31 N.E.3d 17, 30-31 (Ind. Ct. App. 2015) (citing *Love v. State,* 761 N.E.2d 806, 810 (Ind. 2002)), *trans. denied*. The rule only applies "where a *sole witness* presents inherently contradictory testimony which is equivocal or the result of coercion and there is a *complete lack of circumstantial evidence* of the appellant's guilt." *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015). This rule is only applied rarely and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Carter,* 31 N.E.3d at 31. The rule applies only when a

witness contradicts herself or himself in a single statement or while testifying and does not apply to conflicts between multiple statements. *Id.* "Cases where we have found testimony inherently improbable have involved situations either where the facts as alleged 'could not have happened as described by the victim and be consistent with the laws of nature or human experience,' or where the witness was so equivocal about the act charged that her uncorroborated and coerced testimony 'was riddled with doubt about its trustworthiness.'" *Id.* (quoting *Watkins v. State,* 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991), *aff'd in relevant part,* 575 N.E.2d 624 (Ind. 1991)).

[12] Bellamy asserts that the rule of incredible dubiosity applies because D.F.'s testimony was incredible and inherently unreliable in that she could not remember certain details of their encounters, the lack of physical evidence on the couch where D.F. claimed many of the molestations occurred, and the absence of physical trauma to D.F. However, there are no inconsistencies in the testimony of D.F. She consistently testified about the molestations perpetrated by Bellamy, and her description of Bellamy's molestations of her were not inconsistent with the laws of nature or human experience. Additionally, there was no indication that D.F.'s testimony was coerced or equivocal about the fact that Bellamy had molested her. As to Bellamy's contention that there was no physical evidence on the couch, the lack of such evidence could be the result of a number of different possibilities which Bellamy fails to negate. Regarding the lack of physical injuries experienced by D.F., Bellamy does not identify any evidence or authority indicating that a victim in

D.F.'s circumstances would usually experience injuries. We, therefore, conclude that Bellamy's reliance on the incredible dubiosity rule fails.

[13] Furthermore, the incredible dubiosity rule also does not apply because D.F.'s testimony was not completely uncorroborated. *See Moore*, 27 N.E.3d at 755 (stating that testimony of multiple witnesses alone precludes the application of the incredible dubiosity rule). D.F.'s testimony was corroborated by Drake, Bellamy's fellow inmate, who testified that Bellamy had stated that he had sex with the thirteen-year-old daughter of his girlfriend. *Tr. Vol. II* at 129. Although Bellamy claims that Drake's testimony should not be credited for various reasons, it is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve. *Moore*, 27 N.E.3d at 758. Therefore, because D.F.'s testimony was not completely uncorroborated, Bellamy's claim that the incredible dubiosity rule precludes his convictions fails, and we affirm his convictions.

## II. Inappropriate Sentence

[14] Bellamy also contends that his eighty-year aggregate sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The principal role of an appellate court's sentence review is to leaven the outliers, not achieve a perceived correct sentence. *Harbet v. State*, 51 N.E.3d 267, 278 (Ind. Ct. App. 2016). We

independently examine the nature of Bellamy's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The defendant has the burden of persuading the appellate court that his sentence is inappropriate and should be revised. *Kayser v. State*, 131 N.E.3d 717, 723 (Ind Ct. App. 2019).

[15] Here, Bellamy was sentenced to an aggregate sentence of eighty years. As this court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). In looking at the nature of Bellamy's offenses, the evidence showed that, over the course of several months, he repeatedly engaged in acts of sexual intercourse with a girl who was only thirteen years old when he began and continued to do so after she turned fourteen years old. Bellamy's actions were especially egregious because D.F. was at a particularly vulnerable time in her life as her mother and great-aunt were incarcerated, and she was estranged from her father. Further, Bellamy held a position of trust with D.F., and he abused that trust. "D.F. did

not have the care and attention of adults in her family," *Appellant's Br.* at 15, and Bellamy stepped into this void and took advantage of this to molest D.F. on a regular basis. We do not find Bellamy's sentence to be inappropriate in light of the nature of the offense.

[16] The character of the offender is found in what we learn of the offender's life and conduct. *Perry*, 78 N.E.3d at 13. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). The evidence showed that Bellamy has an extensive history of criminal activity. He was convicted of reckless driving in 1999; disorderly conduct and public intoxication in 2001; operating a motor vehicle while intoxicated in 2003; criminal trespass in 2004; driving while suspended in 2005; disorderly conduct and public intoxication in 2006; resisting law enforcement in 2008; possession of marijuana as a Class D felony in 2012; and operating a vehicle while intoxicated in 2016. Bellamy's criminal history consists of approximately a dozen prior convictions before he committed the present offenses and shows a continuous pattern of failing to abide by the law. We, therefore, conclude that his sentence is not inappropriate in light of the nature of the offense and his character.

[17] Affirmed.

Bailey, J., and Mathias, J., concur.